MARGARET A. OLIVER, Plaintiff, v. JOHN L. MOORE, Executor of the Last Will and Testament of HARRIET GROSS, Deceased, Defendant.

*Lease with an agreement to board the lessee — rights of the parties, how affected by the death of the lessee — a deduction must be made if the lessee dies before the termination of the lease.*

In 1884 one Oliver, who occupied the house No. 675 Fifth avenue, in the city of New York, entered into a sealed agreement whereby she let to Harriet Gross two rooms in the third story of said house for the term of eight and one-half months from October then next, at the rate of $2,725, to be paid in weekly portions of seventy-five dollars each, beginning on October first; and also agreed, for and in consideration of the said above-mentioned sum, that she would board, and furnish suitable food for, the said Harriet Gross in a suitable manner for herself and her waiting maid for the whole of the term for which this agreement was made without additional charge or expense to the said Harriet Gross other than was therein contained.

Miss Gross and her maid entered into the occupation of the two rooms, and continued to occupy them until November 27, 1885, when Miss Gross died. Oliver furnished board to the maid up to February 2, 1886. The compensation specified in the agreement was paid to Oliver up to about the time of Harriet Gross' death.

Thereafter an action was commenced by Oliver against the executor of Miss Gross to recover the amount specified in the agreement, after crediting the estate of Miss Gross with $186, received from parties who occupied the rooms after Miss Gross' death.

The plaintiff insisted that the defendant was not entitled to claim any offset upon the theory that plaintiff had saved money by reason of not being obliged to board the decedent and maid for the whole term.

*Held,* that the contract between the plaintiff and the defendant's testatrix was a lease which made Miss Gross the tenant of the demised premises, and that her estate became liable for the rent as long as the term lasted.

*White* v. *Maynard* (111 Mass., 250); *Wilson* v. *Martin* (1 Denio, 602) distinguished.

That, as Miss Gross was as much entitled to her board as to occupy the rooms which had been leased to her, and as the performance of this part of the contract became impossible by reason of the lessee's death, her death operated to lessen the amount of the recovery by the plaintiff under the lease to the extent of the actual cost of boarding the tenant during the balance of the term.

The plaintiff also claimed to recover interest on each weekly payment from the time it became due until the time when the case was tried.

*Held,* that such interest should have been allowed.

Motion for a new trial upon exceptions taken on the trial of the action at the New York Circuit, November 13, 1888, and ordered

to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff rendered by direction of the court.

*J. Noble Hayes*, for the plaintiff.

*H. Kettell*, for the defendant.

BARTLETT, J. :

In 1884 the plaintiff, Mrs. Margaret A. Oliver, occupied the house No. 675 Fifth avenue, in the city of New York, and rented rooms and took boarders there. On the twenty-ninth day of September in that year she entered into an agreement with Miss Harriet Gross, in writing and under seal, whereby she let unto the said Harriet Gross, " all those two certain rooms situated in the third story of house No. 675 on Fifth avenue, in the city of New York, being the front and rear rooms on said floor * * * for the term of eight and one-half months from the first day of October, next, A. D. 1885, at the rate of twenty-seven hundred and twenty-five dollars, to be paid in weekly portions of seventy-five dollars each, beginning on the said first day of October, 1885." By the same instrument Miss Gross, for herself, her heirs, executors and administrators, covenanted and promised to pay the rent and not at any time during said term to let or demise the premises or rooms to any person or persons whatever without the consent of Mrs. Oliver, and further agreed at the expiration of said term to yield up and surrender the possession of said premises.

The agreement also contained the following provision : " And it is further agreed, by and between the parties hereto, and the said Margaret A. Oliver doth covenant and promise that for and in consideration of the said mentioned sum herein agreed to be paid for said rooms, that she, the said party of the first part, will board or furnish for the said party of the second part suitable food and in a suitable manner for herself and her waiting maid for the whole term for which this agreement is made, without additional charge or expense to the said Harriet Gross other than is herein contained."

Miss Gross and her maid entered upon the occupation of the rooms, and continued to occupy them until November 27, 1885, when Miss Gross died. The compensation specified in the agree-

ment was paid to Mrs. Oliver up to about that time. She furnished board to the maid up to February 2, 1886. After the death of Miss Gross, at the instance of her executor, the present defendant, Mrs. Oliver advertised the rooms, and on the first day of May rented them to a family of five persons at thirty dollars a week less than she received under her contract with Miss Gross, although she had to board five persons instead of two. On this substituted contract, the plaintiff credited the estate of Miss Gross with $186. Some portion of the plaintiff's claim has been paid by the defendant, by permission of the surrogate, and received by the plaintiff without prejudice to her claim for the balance to recover which this suit is brought.

Upon the trial the contention of the plaintiff was, as it now is, that the agreement under which the defendant's testatrix took and occupied the plaintiff's rooms was binding upon the executor of the decedent for the full term, whether such agreement be regarded as a lease or as a contract for board and lodging. The plaintiff also insists that the defendant was not entitled to any offset upon the theory that the plaintiff had saved anything by reason of not being obliged to board the decedent for the whole term ; and that the plaintiff was entitled to recover interest on each weekly payment from the time it became due until the time when the case was tried. The defendant, on the contrary, contended that the contract being for the boarding of Miss Gross, was dependent upon her continued existence, and that all obligation upon her part or in behalf of her estate thereunder terminated immediately upon her death ; and hence that the plaintiff was not entitled to recover at all. The trial court did not adopt the view of either litigant in its entirety, but held that the plaintiff could recover under the contract, notwithstanding the death of Miss Gross, but must submit to a deduction equivalent to the expense to which she would have been put if she had been obliged to provide board for the decedent during the whole of the term. The learned judge at circuit also held that the plaintiff could recover interest only from the commencement of the action, and not upon the amount of each of the weekly payments from the time when it became due under the contract. Applying these views of the law to the facts proved, the court directed a verdict for the plaintiff for $499.22, and ordered that the exceptions of both parties

should be heard in the first instance at General Term. I think the contract between the plaintiff and the defendant's testatrix was a lease which made Miss Gross a tenant of the demised premises, and that her estate became liable for the rent as long as the term lasted. The form of the contract is that of a lease, and cannot properly be characterized, as was the parol contract in *White* v. *Maynard* (111 Mass., 250), as " an ordinary agreement for board and lodging in the plaintiff's boarding-house, by which the plaintiff, as keeper of the boarding-house, retained the legal possession, custody and care of the whole house and every room therein." This agreement would be extraordinary, indeed, in form, if intended as the common and usual contract for board and lodging. It gave Miss Gross different rights from those belonging to the ordinary boarder and lodger. It entitled her to exclusive possession of the premises as against Mrs. Oliver, and would have justified her in the use of force to exclude Mrs. Oliver or any one else whom she might choose to deem an intruder. In other words, Mrs. Oliver by this instrument divested herself of the legal custody and control of the rooms and vested such legal custody and control in Miss Gross.

The cases upon which the defendant bases his argument that the contract in question here is merely an agreement for board and lodging, and not a lease, are *White* v. *Maynard* (*supra*) and *Wilson* v. *Martin* (1 Denio, 602). In the first of these cases the action was brought for the breach of an oral contract to provide a family of five persons with board and with three specified rooms as lodgings in a boarding-house, and to light and heat such rooms for a specified period, at the weekly rate of seventy-five dollars. The court held that this was not an agreement for any interest in lands, within the statute of frauds, and, in the opinion of Mr. Justice Gray, a number of English decisions are cited holding that under statutes relating to the elective franchise, and under the valuation and tax acts, a mere lodger in the house of one who retains the legal possession of the entire premises is not a tenant. But the same learned judge goes on to say that " an entire floor of a series of rooms, or even a single room, may, doubtless, be let for lodgings, so separated from the rest of the house as to become, in fact and in law, the separate tenement of the lessee," and this proposition is amply sustained by authority. That it was the purpose of the parties to the contract now under

consideration to create a tenancy on the part of Miss Gross, and not simply to enter into an ordinary agreement for board and lodging, seems evident from the very form of the instrument which they adopted to express their intent. In *Wilson* v. *Martin*, already cited, the agreement was oral, and being merely for board and lodging, with a designation of the particular rooms to be occupied, it was held not to create the relation of landlord and tenant between the parties. It differed materially from this contract, which is a demise in writing of certain premises for a definite term and for a specified sum embracing the entire term. Here the undertaking to board the lessee is collateral to the principal agreement, as was the case in *Shallies* v. *Wilcox* (2 Hun, 419), where a similar undertaking was likened to " a covenant for repairs, or other collateral covenant in a lease, running with it and part of the contract."

The case last cited also bears on the second question presented by this appeal, which is whether the defendant was entitled to offset against the plaintiff's claim the amount which the plaintiff saved by reason of not having to board the lessee during the whole term of the lease. On this branch of the case the plaintiff insists that the contract entitles her to recover the whole amount specified therein, less what she has already received, inasmuch as she was at all times prepared and willing to furnish board to two persons up to the end of the term. But the persons thus to be boarded were particularly designated in the agreement, and Harriet Gross, one of them, was expressly named therein. It could not have been within the contemplation of the parties that the undertaking to furnish board would become applicable to some other person in the event of her death.

In the case of *Shallies* v. *Wilcox* (*supra*), the plaintiff leased certain premises to the defendant at a yearly rent of $300, and further agreed, in consideration of the covenants and agreements contained in the lease, to board the defendant at his house. After a while he refused to allow the defendant to board there, and, in an action on the lease for the stipulated rent, it was held that the defendant had a right of recoupment and counter-claim to the extent of the value of his board from the time the plaintiff refused to board him. " When the lessor elected not to board the defendant longer, for whatever cause," said the court, " he released, in legal effect, a right

to recover the full consideration for the occupancy of the store, called rent, to the extent of the value of the defendant's board." It was also said, in that case, that the sum of $500 stipulated to be paid for rent was in part payment for the defendant's board, and that he was as much entitled to his board as he was to occupy the demised premises. So here, it is equally true that Miss Gross was as much entitled to her board as to occupy the rooms which had been leased to her. The plaintiff did not refuse, like the lessor in the case cited, to furnish the board, but the performance of this part of the contract became impossible by reason of the lessee's death. As the agreement was to board Miss Gross personally, I think her death operated to lessen the amount recoverable by the plaintiff under the lease, to the extent of the actual cost of boarding the tenant during the balance of the term. But there is no evidence in the appeal book which shows what it would have cost thus to board her. The only testimony having any bearing on the subject was given by Henrietta Bushnell, who could state no figures at all, and by the plaintiff, on cross-examination, who said: "I am not in the habit of giving table board, but if I did, it would be ten or fifteen dollars a person. It would be ten now and at that time ten." By this she evidently meant that her charge to the boarder would be ten dollars a week; but, of course, that charge would include a profit, and the statement affords no basis for a finding as to the cost of the board.

While the learned trial judge was right, therefore, in holding that there might be a deduction on account of the fact that the plaintiff was not obliged to furnish board to the defendant's testatrix during the whole term, there was a failure to prove the facts necessary to the maintenance of an offset on this ground.

As to the amount of interest which the plaintiff was entitled to recover, I am unable to see why she should not have been allowed interest upon each weekly payment from the time it became due. If the contract had been carried out according to its terms, the plaintiff would have received seventy-five dollars every week, and from the time she received that amount would have enjoyed its use. This use, which the defendant has retained to himself, was worth the legal rate of interest, and it is no hardship to the defendant, and simply justice to the plaintiff, to compel its payment.

The exceptions of the defendant should be overruled, and the exceptions of the plaintiff should be sustained and a new trial granted, with costs to the plaintiff to abide the event.

VAN BRUNT, P. J., and BRADY, J., concurred.

Exceptions of defendant overruled, and the exceptions of the plaintiff sustained and a new trial granted, with costs to plaintiff to abide event.