was killed, from the point where the whistle should blow and the bell should ring, it was necessary to pass that very group, and a signal given to warn them would undoubtedly be a signal to those on the crossing itself. This group of laborers was in plain sight for one-half a mile or more. They were busily engaged in their occupation upon the track. Their foreman was warned, as he testifies, by the sound of the bell and the whistle. And it is incredible that on a bright afternoon in May a locomotive engineer or a fireman would fail to warn laborers, busy upon the track over which the train must pass, of that approaching train, so that they might clear the track in time, and not carelessly stand upon it, or too near it for safety. The danger was so obvious to those in charge of the train that it would have been inhuman to have neglected the warning. The testimony of the foreman in charge of the Italian laborers, of the railroad employés, and of the blacksmith, is so thoroughly in harmony with the natural and almost certain action of men under similar circumstances that, in the view of this court, a jury had no right to throw aside this affirmative testimony, and these strong presumptions, upon any plea that railroad servants will testify to anything in the interest of the corporation, for fear of consequences, and uphold the negative testimony of those who did not hear, or were unconscious at the time of hearing, as overpowering the other class of evidence sufficiently well to produce a verdict for the plaintiff. The verdict, therefore, will be set aside as against the weight of the evidence.

Motion granted.

---

(25 Civ. Proc. R. 240; 16 Misc. Rep. 651.)

### In re QUINN'S ESTATE.

(Surrogate's Court, New York County. October, 1895.)

TRUSTS—ACCOUNTING BY TRUSTEE—COUNSEL FEES.

> A trustee will not be credited with payments alleged to have been made for legal services, where no bill for the alleged services was rendered, and there is no evidence of any of the details of work done, and no vouchers for the payments.

Accounting by the testamentary trustee under the will of Joseph P. Quinn, deceased.

Burr & Coombs, for plaintiff.

R. & E. J. O'Gorman, for testamentary trustee.

ARNOLD, S. This is an accounting by a testamentary trustee. Upon objections filed, a reference was ordered. Upon the hearing, proof was made as to one item which had been objected to, and the objection was withdrawn; and, as to another contested item, it was admitted that it should be allowed. As to all the other items excepted to, it was conceded by the accountant that the objections should be sustained, with the exception of certain payments claimed to have been made to counsel for legal services. As to these the contest proceeded, and the referee has allowed and credited them to the accountant. Exceptions to such allowances were duly filed,

and are now insisted on. No bills for the alleged services were ever rendered to the trustee, nor is there any competent evidence of any of the details of the work done; and there are no vouchers for the payments produced, except certain checks, which are drawn to the order of, and indorsed, and appear to have been collected, by these attorneys, or one of them. Their aggregate is much larger than the amount which the accountant asks to be allowed to her here, but this is sought to be explained by her statement that the services were in respect to three trust estates, and that she charged to this one only one-third of the whole. The attorney who seems to have collected this money died before the petition was filed herein, and there is evidence produced showing that he died insolvent. An executor, trustee, or other accounting party may be allowed, upon such accounting, "for his actual necessary expenses as appears just and reasonable." Code, § 2730. Under the sanction of this provision, allowance is made for payments to counsel for their services by the accountant; but that class of "expenses" is entitled to no immunity from the inflexible rule that all disbursements which reduce the amount to be distributed to those interested in an estate must be shown to have been necessary to the proper administration of such estate, must be shown to have been actually rendered, and it must be further shown that the amount paid for them was reasonable, according to their character and importance, and, it may now be said, with reference to the results obtained. Randall v. Packard, 142 N. Y. 47, 36 N. E. 823. As above stated, no details of the services for which the contested payments were here made are furnished. It is shown that the trust estate embraced certain houses in this city; that the trustee did not live here; that she was inexperienced in business matters; that she did not, and, she claims, under the circumstances, could not be expected to, personally take charge of these buildings; that she employed an agent to look after them, collect rents, etc.; that orders were made by the board of health which required this agent to see her attorney frequently; that she made payments to the trust beneficiaries through the latter; and that she sought his professional advice repeatedly. But all this is mere generalization,—no proof of the value of the services given, no dates furnished, no particulars of the time spent, of the labor performed; nothing from which any court can put a value upon the work, and say it is just and reasonable, or, in fact, upon which any professional witness could fairly predicate any opinion as to the actual work done, its necessity, its results, or its value. The trustee is, no doubt, situated unfortunately. Her attorney is dead, and she can produce no bills or vouchers, except these checks, which do not give any information upon their face as to what they were given for. But this state of affairs does not relieve her from the usual burdens on an accounting. Again, much of the work which she claims was performed by counsel, such as payments to beneficiaries, looking after the agent of the property, etc., was just such work as it was her duty personally to perform, and for which she is allowed commissions. If unable or unwilling to perform these duties, she should have resigned her office. The exceptions

to the referee's report are sustained. In view of the fact that objections were taken which had to be withdrawn, as well as in consideration of the apparent good faith of the trustee in her conduct of the administration, even in respect to her dealings with counsel which have been here criticised, she should not be charged personally with costs.

Exceptions sustained.

(17 Misc. Rep. 108)

## In re STOCKWELL'S WILL.

(Surrogate's Court, Onondaga County. May, 1896.)

WILLS—EXECUTION—SUBSCRIBING WITNESS.

A subscribing witness, who did not see testatrix sign her name, and to whom testatrix did not expressly acknowledge her signature, testified that she did not see the signature when she signed as a witness. It appeared, however, that the witness and her husband, who was also a subscribing witness, were in the room when testatrix wrote the will; that the husband first signed as a witness after testatrix had signed the will, and then his wife signed; and that at the time of such signing the paper had not been folded, and the signature of testatrix was in full view. *Held*, that the evidence showed that the signature of testatrix was seen by the witness at the time she subscribed her name.

Proceeding for the probate of the will of Martha N. Stockwell, deceased. Granted.

Frank L. Young, for proponent.

Edward J. Shanahan, for contestant.

GLASS, S. The only question in this proceeding is whether or not there was a sufficient acknowledgment by the testatrix of her subscription to the instrument offered for probate as her will. The statute requires either that the subscription shall be made by the testator in the presence of each of the subscribing witnesses, or that it shall be acknowledged by him to have been so made, to each of the attesting witnesses. Neither of the subscribing witnesses saw the testatrix subscribe her name to the paper, nor did the testatrix, by any spoken word, acknowledge to either of the witnesses that she had subscribed it. It is claimed, however, in behalf of the proponent, that, although there was no verbal acknowledgment by the testatrix of her subscription, her acts in connection with the execution of the will amounted to an acknowledgment of subscription, and that, therefore, the statute was complied with. The will was drawn by the testatrix herself, and was executed on the 23d day of March, 1895, at the house of Mr. Abernethy, her cousin, in Syracuse, N. Y. She had been a member of his family for about three years, and Mr. and Mrs. Abernethy and Isabella G. Paton, a servant in the family, were the attesting witnesses. Miss Paton was not called as a witness in this proceeding, and it does not appear when or where, or under what circumstances, she signed the will as a witness. The circumstances attending the execution of the instrument before Mr. and Mrs. Abernethy as attesting witnesses were as follows: The testatrix and Mrs. Abernethy were both sitting in the library of the Abernethy home on the day in question. The testatrix was