## GROSS v. MOORE.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

1. ADMINISTRATORS—ATTORNEY'S FEES—AMOUNT.

An administrator c. t. a. was entitled to an allowance of $5,000 for an attorney who successfully conducted proceedings involving testator's mental capacity, where the estate involved $100,000, and the taking of testimony occupied 22 days, and the oral arguments two days, and briefs were prepared, and an appeal taken to the general term, and a hearing there had.

2. SAME—UNJUSTIFIABLE LITIGATION.

An administrator was not justified in continuing the contest of a claim against the estate where the question of law involved was simple, and had been held against him by an appellate court, and the expenses of further litigation were likely to amount to considerably more than the claim itself.

8. SAME—LITIGATION IN PERSONAL INTEREST.

Where heirs of testatrix sued for a construction of the will, claiming that a bequest to the executor, since deceased, was void, and the administrator c. t. a. disputed the claim as heir of the executor, and there was a judgment for plaintiffs, which was affirmed, with costs against the administrator personally, the administrator was not entitled, on a settlement, to an allowance for fees of his attorney in the action.

43 N.Y.S.—60

Appeal from special term, New York county.

Action by John L. Gross against William L. Moore, administrator c. t. a. of Harriet Gross, deceased. From a judgment entered on an order confirming the report of a referee allowing the administrator's account, plaintiff appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Cephas Brainerd, Jr., for appellant.

Herbert Kettell, for respondent.

RUMSEY, J. The defendant William L. Moore is administrator with the will annexed of Harriet Gross, deceased, of whom John L. Gross is a brother. Mr. Gross brought this action against Moore, the administrator, and others, who are next of kin and legatees of Harriet Gross, asking for the construction of certain clauses of her will, and that the defendant Moore, as administrator, should be compelled to account as such. There was a trial upon issues which were raised by the answer. A judgment was entered upon the decision, construing the will, and directing the administrator to account before a referee to be appointed. That judgment having been affirmed, the administrator filed his account. A referee was appointed, before whom the exceptions to the account were heard. The account was approved by the referee, and the administrator was allowed for all the payments which he claimed to have made. The report of the referee was confirmed, and final judgment entered upon it, from which the plaintiff takes this appeal. The sole question raised upon the appeal involves the propriety of the allowance by the referee of the total which the administrator claims to have paid for legal services in behalf of the estate during its administration. This amount as paid by him was $17,307. It contained $342.-14 of disbursements, and it appears from the account that the administrator had also paid, to the same attorney who received the $17,000, $1,000 as a retaining fee; so that the total amount paid out for legal services in the course of the administration of this estate was $18,307. Substantially all the services included in this sum of $17,307 were rendered by a single attorney in three different proceedings. The bill of the attorney, which is set out in full in the case, does not contain any separate account of the amount charged in the different actions and proceedings, nor for any particular service which was performed. It occupies something over 22 pages of print in the case. It begins with a general statement of the professional services which were performed for this administrator, commencing with those performed in the proof of the will, and coming down to some period, which is not precisely stated, during the progress of this particular case. While the bill contains, under separate dates, statements of things which were done by the attorney with reference to the business of the estate, the value of no one of those particular services is stated. The time which they occupied is not given. Many of them are memoranda of clerical services, which might have been done by a clerk or even a messenger boy, and gen-

erally they afford no information whatever either as to the amount or kind of legal services performed, or of the time taken in performing them.   The referee does not find affirmatively that the services rendered were worth the amount which was paid for them by the administrator, nor does he make any finding of fact on the subject, either as to the amount of services rendered or their value. Neither does he, in his opinion, give any estimate of the value of these services, except that he says generally that he is of the opinion that the administrator should be allowed the amount paid for legal expenses therein named, $17,307, and that the exceptions to that payment shall not be allowed.   The fact that the case is in this condition has imposed upon us the burden of examining with more particularity than would otherwise be necessary the evidence in the case, as well as the various records which were produced upon the hearing before the referee, and which we have examined, to enable us to decide intelligently whether this conclusion of the referee is correct.

We find that practically all the services paid for were rendered in three proceedings, the first of which was the probate of the will of Miss Gross.   The will having been presented for probate, objections were filed to it, which involved the testamentary capacity of the testatrix.   A long hearing was had before the surrogate, which resulted in the will being admitted to probate.   An appeal was taken from his decree, which was affirmed by the general term.   At that point the proceedings seem to have ended.   It appears from the case that the taking of testimony before the surrogate occupied 22 or 23 days, and that there were 2 or 3 days of oral argument after the testimony had closed.   After that, printed briefs were made for the use of the surrogate, which were replied to by the opposing parties.   The time taken in doing that work has not been made to appear, but, from the nature of the questions which were raised before the surrogate, it is probable that it was considerable.   After the decision of the surrogate, the usual proceedings were had to perfect an appeal to the general term, and for a hearing in that court.   The same questions were raised there which were raised before the surrogate, and, of course, no great amount of examination was necessary to prepare the case for argument in the general term, beyond that which had already taken place before the surrogate.   The amount involved was in the neighborhood of $100,000. Most of the witnesses who were sworn as experts upon the hearing before the referee, and who gave testimony about the value of the services, stated simply that, in their judgment, all the services together were worth a certain sum.   One or two of them undertook to separate the value of the services rendered in the different proceedings, but the testimony of no one of them in his effort to do so is particularly satisfactory.

In judging of the value of legal services, it is proper to consider the time occupied by them, the difficulty of the questions involved, the nature of the services rendered, the amount involved in the litigation, the professional standing of the counsel who claim pay for services, and to some extent the result which has been reached.   It

is apparent that the last consideration can bear little, if any, upon the amount of work which has been done, but yet it is always accepted as a proper element to be considered in reaching the value of the services which have been rendered; and for that reason, while it is entitled to but little weight, yet it must not be forgotten. ' Taking all these into consideration in regard to the will case, we have concluded that the executor should have paid no more than $5,000 to his attorney and counsel in that matter, and this we regard as a very liberal charge for the services which were rendered to him therein. In fixing the amount at that sum, it is to be remembered that none of his disbursements is included, all those disbursements having apparently been paid for and charged by him in some other account which has already been settled.

The next services rendered in which a charge is made were in the case of Oliver v. Gross. This is an action brought by one Oliver upon a written contract between herself and Miss Gross, the testatrix, by which she leased to Miss Gross, in writing, certain rooms in the lessor's lodging house on Fifth avenue, for a certain time, at a price stated in the lease. The lease also contains an agreement that Mrs. Oliver was to board Miss Gross and her maid for the term of the lease, the price of the rooms and board being fixed by the lease. It seems that Miss Gross died before the expiration of the term, and a claim was made by Mrs. Oliver for the amount of the rent for the full term. This was resisted by the administrator. Upon an accounting before the surrogate, it was arranged between the parties that one-half of the claim should be paid by the administrator to Mrs. Oliver, leaving the remainder to be collected by litigation if she saw fit to attempt it. She did attempt it, and brought her action to recover the remainder of the amount to which she claimed to be entitled. The making of the contract was not disputed. That there was some liability was not denied. The only question was, therefore, whether the estate was liable to pay more than the amount which had already been paid as the result of the arrangement before the surrogate. The full amount claimed by Mrs. Oliver was something over $1,100. This litigation, presenting so simple a question as this, was made to involve three trials in the circuit, three appeals to the general term, and one appeal to the court of appeals (36 N. E. 343); and the estimate of the value of the services rendered to the defendant in that action, in defending a claim of $1,100 against this estate, is something over $3,000. This statement of facts shows that there is something intrinsically wrong about the whole matter. That an administrator should be permitted to subject his estate to so great an expense in litigating its liability to pay an amount only equal to one-third of the fees seems somewhat absurd, and, unless some extraordinary circumstances occur, certainly it should not be permitted.

Upon examination of this case, we find that upon the first trial a verdict was had for the plaintiff, and the exceptions were ordered to be heard in the first instance at the general term. This was done, and upon that hearing, as was stated by the courts in the subsequent appeal, the questions of law were fully examined, and were decided

in the plaintiff's favor.　Oliver v. Moore (Sup.) 6 N. Y. Supp. 413, 15
N. Y. Supp. 210.　Upon a subsequent trial, the plaintiff, as the nec-
essary result of the decision of the general term in the first case, had
a verdict.　This verdict, as it seems, was set aside upon the defend-
ant's appeal, for reasons which did not at all change the view of the
law taken before, but which were applicable only to what was done
upon the trial then presented for review, and which really in no way
involved the merits of the controversy.　The appeal, as it turned out,
was of no possible benefit to the defendant, and it must have been
quite evident that that would be the case at the time when the
appeal was taken.　But it resulted in a reversal and a new trial, and
again a verdict was rendered for the plaintiff, in precise conformity
with the views which had been expressed by the court before, and
which increased the amount given by the jury on the former trials.
From that judgment the case again went to the general term, and,
after the necessary affirmance, it went to the court of appeals, where
it seems that the judgment was affirmed without hearing the re-
spondent.　It is quite evident from this résumé of the case that,
although the second appeal to the general term resulted in a reversal
of the judgment for the plaintiff, yet that such reversal was of no
appreciable benefit to the estate.　It simply caused an increase in
the amount of the verdict which was sure to be rendered in favor of
the plaintiff as the necessary result of the law, which was settled
upon the first appeal.　All hearings in the general term, after the
first, were unnecessary for the purpose of settling the law or of de-
ciding the ultimate liability of the plaintiff.　While in such cases the
administrator undoubtedly has the legal right to control the litiga-
tion, and to say whether it shall be pursued further, yet that right
is not unaccompanied with certain perils.　It is his duty to litigate
claims against the estate which he believes in good faith to be un-
founded in fact or in law sufficiently to require that they shall be
established against the estate as the law compels.　This he may do
by consenting to a reference, which is the cheapest and most ex-
peditious way, or by compelling the plaintiff to resort to an action.
When that has been done, and the hearing has been had, and judg-
ment entered against the estate, the absolute duty of the adminis-
trator has been performed.　The judgment then entered is a protec-
tion to him in his payment of the claim.　If he still has reason to
believe that the trial court has taken an erroneous view of the law,
it may be proper to settle the question, or to satisfy his conscience
that he should cause the judgment to be reviewed.　But after one
appeal has settled the law against him, while he has still the right
to continue the litigation, he never should do it unless he has reason
to believe that the law laid down is erroneous, and that the result of
the appeal would be to free the estate from a liability which would
be greater than the expense incurred by the litigation.　He certainly
never should do it in a case where the law has been held against
him by the appellate court, and the expenses of a continued litiga-
tion are likely to amount to a considerably greater amount than the
claim made against the estate.　It was possibly well enough in the
Oliver Case to require a suit to be brought, instead of consenting to

a reference. The first hearing at the general term was necessary, because the court had ordered the exceptions to go there in the first instance. After the law had been settled against the defendant, of course it was necessary to have another trial; but all the litigation from that time on was a luxury, which the administrator availed himself of at his peril. He was not called upon to litigate again and again through the courts a plain question which had been settled against him at the first appeal, and which was so plain that the court of last resort refused to hear argument upon it. We think that a fair counsel fee in the Oliver Case, taking everything into consideration, is the sum of $1,250.

The third litigation which is in question is the one in which this appeal has been taken. A few words will dispose of that. The action was brought to construe the will of Miss Gross. It was claimed that the residuary bequest was invalid. That bequest was of the residue to the executor, to be distributed by him according to instruction given to him by the testatrix. No valid instructions were ever given. The appellant here claimed that, because no valid instructions were ever given, the original executor took the residuary bequest absolutely, and that he, as one of the next of kin, was absolute owner of one-half of it. The plaintiff, with the other next of kin of Miss Gross, claimed that the residuary bequest was absolutely void. It will thus be seen that the contest was between the next of kin of Miss Gross, on the one hand, and the appellant here, in his personal capacity, on the other. The court held that the bequest in question was absolutely void, and that the property affected by it went to the next of kin. The defendant appealed to the general term, where the judgment was affirmed, with costs to be paid by him personally. This he appealed to the court of appeals, where the judgment was also affirmed. Upon the entry of that judgment, he filed his account, upon which these proceedings were had. It is evident that this litigation, so far as it involved the construction of this bequest, was not had for the benefit of the estate, but solely for the benefit of this defendant personally, and that seems to have been the view taken by the general term, which charged him personally with the payment of the costs in that court. It would be a strange condition of affairs if this defendant, having been charged personally with the costs of this litigation, should be permitted to fix at his own will a counsel fee to be paid to his own attorney out of the estate. That would be, in fact, to nullify the adjudication of the court that he should pay the costs personally. He was not entitled to pay out of the estate in this litigation any more counsel fee than what might have been incurred in the litigation at the special term and in settling his account, both of which were the things he might properly do at the expense of the estate. It seems to us that a proper amount to be allowed to him in these matters is the sum of $1,000.

The attorney stated upon his examination that he had given the executor, from time to time, advice in regard to the management of the estate and upon such incidental legal questions as arose in that behalf. The value of those services he did not attempt to fix. Inasmuch as it appears from his statement that he had received the

sum of $1,000 as a retainer, and it is fair to infer from his receipt that he had been paid some other sums in addition, we are inclined to think that the retaining fee and the other payments made to him, if there were any, are large enough to fully pay him for such incidental services as he may have rendered, but the value of which he did not state. The bill contains some account for disbursements, which should be allowed as made.

The result of this examination is that the report of the referee should be modified by allowing for the payment for his legal expenses the sum of $7,250, and allowing his disbursements, which were fixed in the bill at $314.14, the whole amounting to $7,592.14; and, as modified, the judgment entered upon the report should be affirmed, without costs to either party in this court. All concur.

