Surrogate's Court, Rensselaer County, June, 1903.   [Vol. 41.

discloses that the executors were required to sell the land and pay legacies from the proceeds, some of which they were to pay, in money, to themselves as trustees. The provisions of the will in the Clinton case are reported fully, on appeal, in 12 App. Div. 132, where it was held that the duties of the executors, as such, and as trustees, were not separable, and that they were entitled to commissions only as executors. Trust duties were imposed upon them which required a sale of land for their performance, which sale would be made by them as executors.

The decree will be settled and one commission only, computed upon the personalty received and paid out by the executors, will be divided between them.

Decreed accordingly.

Matter of the Judicial Settlement of the Accounts of the Executrix of the Estate of MARY L. OGDEN, Deceased.

(Surrogate's Court, Rensselaer County, June, 1903.)

**Surrogate — Power over realty — Disbursements of administration — Expenses of a will contest.**

Where the will of a testatrix, partially disposing of real and personal property worth $63,000, merely appointed another woman executrix, with power of sale, gave and devised to her one-half of all the property and gave her no control over the real estate, the surrogate refused to consider any questions relative to the expenses incurred by the executrix in managing the real estate and refused to allow any of them.

He allowed $495 for the testatrix' funeral expenses and, to the executrix' husband, $300 for protecting the property of the testatrix for six months and until a temporary administrator of her estate was appointed during a contest of her will.

He rejected the claim of the husband of the executrix for his services in caring for the real estate of the testatrix and for services, as to the personalty, which the executrix should have performed herself.

He reduced the claim of a consulting physician of the testatrix, son of the executrix, for seventeen days' attendance from $350 to $150.

He allowed, in view among other things of the contest of the will, $4,000 each to the attorney and to the counsel of the executrix, who had prevailed.

He charged the expenses of the will contest and those of administration against the whole personal estate although half of it would, under the failure of the will to dispose of it, pass to the next of kin.

PROCEEDINGS upon the judicial settlement of the accounts of an executrix.  Objection to accounts.

Justin Kellogg (L. E. Griffith, of counsel), for executrix and petitioner.

Edward H. Leggett, John H. Burke, and Edward M. Tompkins for next of kin.

Eugene Bryan, special guardian.

HEATON, S.   Judicial settlement of the accounts of Mary F. Fairweather, as sole executrix of the will of Mary L. Ogden, deceased.   Objections by many next of kin, which objections have been tried.

Mary L. Ogden died March 2, 1899, leaving a will which was offered for probate soon after, and which was contested before the surrogate, admitted to probate April 5, 1900, affirmed by the Appellate Division, and decree of affirmance entered January 28, 1901.   September 13, 1899, letters of temporary administration were issued to Henry B. Dauchy who, on October 27, 1899, filed his inventory of personal estate showing $37,665.09.   Letters testamentary were issued to Mary F. Fairweather April 5, 1900, and on April sixteenth said temporary administrator accounted and turned over to such executrix personal property inventoried at $40,062.26.   The deceased also left real estate estimated at a value of $23,000.

The will of Mary L. Ogden appoints Mary F. Fairweather executrix and gives her one-half of her estate in the following words:   " Second.  I hereby nominate and appoint Mrs. Alexander Fairweather of Troy aforesaid to be the sole exec-

utrix of this my last will and testament hereby authorizing and empowering her to lease, and to sell at public or private sale, any and all real property of which I shall die seized or possessed, or to which I have any claim, and to execute and deliver proper conveyances of the same to the purchasers thereof. *Third.* I give, devise and bequeath to Mary F. Fairweather one-half of all my property."

The determination of most of the questions raised on this accounting depends on the rights and duties of the executrix under this will as to the real estate left by the deceased. The executrix claims a credit for disbursements made in leasing and managing the real estate. If she had no duty as executrix to lease, manage, and control the real estate she should not be allowed for such disbursements as the Surrogate's Court is not constituted for the settlement of the accounts of real estate agents. As to one-half of the real estate the will is silent, and, therefore, such real estate descended upon the death of Miss Ogden to her heirs-at-law.

The will does not give the rents to any person, does not direct a valid accumulation of the rents, does not create a valid trust of such rents; neither are the rents included in the account filed. Any allowance for expenses connected with the real estate must, therefore, be paid from the personal estate, should such allowance be made in this accounting. The pending partition action is the proper proceeding in which to settle questions of rents and expenses of real estate management. The Surrogate's Court has no jurisdiction over realty left by a decedent or its avails unless brought within it by a will or by a statute for the purpose of being dealt with for some special purpose. Sweeney v. Warren, 127 N. Y. 426–435.

In the case at bar it is claimed that some of the persons who share in the personal estate have a greater interest than others in particular parcels of the real estate and this furnishes an additional reason why the rents should not be accounted for in this court. But it seems clear that Mrs. Fairweather, as executrix, had no duty to perform in relation to renting the real estate, and whatever she did in rela-

Misc.]　Surrogate's Court, Rensselaer County, June, 1903.

tion to the same she did as an owner in common with others and not as executrix of the will of Miss Ogden. There is abundant authority for the settlement of this question in the partition action. Brown v. Mount, 54 App. Div. 605.

The objections made to various disbursements by the executrix are directed principally to those expenses of administration created by the executrix. The burden of proving the justice and necessity of such disbursements rests on her. Matter of Hosford, 27 App. Div. 427; Matter of Peck, 31 id. 407.

Objection is made to a payment of $495 for funeral and burial expenses. It appears from the voucher filed that this bill includes burial expenses at the cemetery, carriages at the funeral, flowers, music, and other necessary incidental expenses in addition to the casket. The charges are not unusually large and the funeral seems to have been in keeping with the station in life of the deceased. The objections are overruled and the credit allowed.

Objection is made to payment of $300 to Alexander Fairweather, husband of the executrix, for services rendered in preserving, protecting, and caring for the property of deceased from the time of her death to the date of the appointment of the temporary administrator, a period of about six months. The deceased had no near relatives. She left a large city residence, several pieces of tenement property, securities, etc. It was necessary for the interests of all parties that some one should immediately take charge of and protect this property until the heirs to the real estate could be found, and until some one was duly authorized to take possession of the personal estate. For these reasons the objections to this item are overruled and the credit allowed.

Objection is made to the payment of $1,075 to Alexander Fairweather for services rendered by him from the date of the appointment of his wife as executrix to the date of making the account. The evidence shows that such services were rendered in looking after renting, collecting rents, repairing, paying taxes, etc., in connection with the several pieces of real estate left by the deceased, and in collecting

11

interest and dividends from fifteen securities comprising the invested personal estate of the deceased as it came to the hands of the executrix, and in keeping the estate accounts. It is claimed that this labor should have been performed by the executrix herself. The general rule is that executors are not only bound to assume the responsibility and exercise the discretion of their office, but must also perform, within reasonable limits, the actual manual labor required by the due execution of the trust, but the courts have been careful not to insist that so much clerical work should be either personally performed by an executor or paid for by him as to make the acceptance of such a position impossible without considerable personal loss. Matter of Harbeck, 62 N. Y. St. Repr. 373.

Mrs. Fairweather has for several years been in very poor health so that she could not have performed the services rendered by her husband in connection with the real estate. But as has been shown she had no duty as executrix in regard to the real estate, and that what she did, or caused to be done, in managing the real estate, she did as a tenant in common with the other owners, and her accounts in connection with the same she must settle with the other owners or in the partition suit now pending.

There were but fifteen securities which came to the hands of the executrix. If interest or dividends were paid upon these semi-annually the labor of receiving such payments and keeping an account of the same was not so great or arduous that under the well-established principle the executrix should be allowed to charge the estate for the services of her husband in connection therewith. The objections to this item of $1,075 are sustained and credit therefor disallowed.

Objection is made to the payment of $350 to Dr. Fairweather for services rendered from February 19 to March 8, 1899, being for eleven days before and six days after the death of deceased. He is a son of the executrix. He was present much of the time during Miss Ogden's short illness but was not the physician in charge. There was also a nurse

in attendance. After Miss Ogden's death he took charge of the funeral arrangements. This payment is clearly excessive and the objections are sustained to the extent of $200 and the credit allowed at $150.

Objection is made to the payment of $250 to Dr. M. F. Phelan, the attending physician of the deceased. The evidence shows that Dr. Phelan devoted most of his time to deceased during her illness and was in attendance both night and day; that he refused other business and gave up his office hours. Under the circumstances the charge is not excessive. The objections are overruled and the credit allowed.

Objection is made to the payment of $4,000 to ex-Judge L. E. Griffith as counsel fees in the will contest and in other litigations, and concerning other legal questions which have arisen. There appeared for the contestants of the will several lawyers of recognized ability and with them was associated Attorney-General Hancock. It was, therefore, not improper that if the executrix desired to employ counsel she should secure the services of an able and astute lawyer. The ability, long experience, and standing at the bar of such counsel must be taken into consideration in considering whether or not his charge was excessive. It is not enough to say that less expensive or less able counsel might have been employed, or that not a great number of days were actually occupied in taking testimony. The professional standing of the counsel employed, the amount involved in the litigation, the nature of the services rendered, and to some extent the result which has been reached all tend to sustain the payment made. Garfield v. Kirk, 65 Barb. 468; Gross v. Moore, 14 App. Div. 356. The objections are overruled and the credit allowed.

Objection is made to the payment of $6,000 for services and disbursements of the attorney for the executrix. His services consisted in taking almost whole charge of the estate and in doing much work that should have been performed by the executrix herself, who, on account of poor health, was not able to fully exercise the duty of her office. It is shown also that the services of the attorney extended

Surrogate's Court, Rensselaer County, June, 1903.    [Vol. 41.

to the management and control of the real estate left by deceased, over which, as has been shown, the executrix, as executrix, had no authority. No doubt in the two ways pointed out the attorney has spent much time, but it does not necessarily follow that such services should be paid for by the next of kin. The executrix cannot be allowed attorneys' fees paid for simple and nonprofessional services which a person of ordinary business ability might have performed. Matter of Quinn, 16 Misc. Rep. 651; Matter of Arkenburgh, 13 id. 744; Matter of Van Nostrand, 3 id. 396.

Neither can she be allowed for services of her attorney in regard to the real estate, one-half interest in which was devised to her directly and absolutely and the other half interest in which was not devised at all. There was sufficient personal estate to pay debts and expenses so that she had no duty as executrix to perform in relation to the real estate, and she should not be credited with attorneys' fees paid in relation to it. Eminent counsel was employed in all the litigation to which the executrix was subjected, and upon him necessarily fell the burden of the labor involved in such litigation. It is perhaps unfortunate that the attorney of record kept no entry or account showing the nature and extent of his services, so that consequently his evidence to sustain his charge of $6,000 is somewhat unsatisfactory. He is not able to give more than an estimate of the amount of his disbursements in connection with his employment. It is difficult under the evidence to fix accurately the amount which ought to be allowed the executrix for the services of her attorney in connection with the personal estate of the deceased and the litigation which has arisen. A payment of $4,000 to such attorney for all such services and disbursements is allowed as a credit to the executrix and as to the balance of the payment the objections are sustained.

The contestants further claim that the account of the executrix should be surcharged with two items, one for certain jewelry not inventoried and the other for a debt due from the executrix to Miss Ogden. As to the jewelry it has been consented that the account be surcharged with $225

Misc.]    Surrogate's Court, Rensselaer County, June, 1903.

as the agreed value of the same.   As to the debt it is shown
by the executrix that she was the general guardian of Isabella
Powell, a minor, who lived with Miss Ogden and died in
1897.   A bill was presented by Miss Ogden for the funeral
expenses of the deceased which was paid by Mrs. Fair-
weather and it is claimed by her that as part of the same
transaction a bill for the board of deceased, the minor, was
presented to Mrs. Fairweather and settled and a receipt
given, which has been introduced in evidence.   Ignoring the
question as to whether or not Mrs. Fairweather, as executrix,
could be surcharged with a debt due from her as guardian,
it does not appear that she ever made an agreement with
Miss Ogden for the support of the minor, or that Miss Ogden
had not at the time of her death satisfied and discharged any
claim that she might have had.   The objections to the ac-
count are not sustained.

Objection is made to the allowance of the expenses of ad-
ministration and particularly the expenses of the contested
probate against the undivided half of the personal estate
which was not bequeathed by the will, on the theory that
such expense was solely for the benefit of Mrs. Fairweather.
No decision of our courts has been cited upon this point.
So far as the expense of the contested probate is concerned
no doubt Mrs. Fairweather was the person principally bene-
fited by the probate.   But it was her right and her duty to
offer the will for probate and she established it before the
surrogate.   She was also named as executrix and the pro-
bate and her subsequent appointment as executrix were for
the benefit of the next of kin for whom she was a trustee
of the unbequeathed assets.   Wager v. Wager, 89 N. Y. 161.
It was necessary to have the will established or judicially
declared to be not a valid will before a representative of
the estate could legally act in collecting and distributing the
assets.   Matter of Haughian, 37 Misc. Rep. 457.   No ad-
ministrator can be appointed unless the person dies intes-
tate.   Code Civ. Pro., § 2660.   Mrs. Fairweather was not
acting for herself alone but was discharging a duty which
she is commanded by our law to perform, and which she

owed to all the next of kin when she offered for probate a will of which she had knowledge or possession. The reasonable expenses incurred by her are therefore chargeable upon the whole personal estate.

The amount of the transfer tax due from the legatee and from each next of kin has been practically agreed upon and a statement thereof filed. The appeal from the order of the appraiser has been heard with this proceeding, and the order may be amended in conformity to the statement filed. The amount of such tax against each of such persons on both real and personal must be collected by the executrix, and she may do this by retaining the same from the legacies or distributive shares.

It has been suggested that Mrs. Fairweather is entitled to two shares in the unbequeathed personal estate because both her father and mother were cousins of the deceased. As all of the class in which were her father and mother are dead, and Mrs. Fairweather belongs to the class of next of kin nearest to the deceased she takes in her own right and not in the right of her father and mother, and, therefore, takes but one share.

Decreed accordingly.