(41 Misc. Rep. 158.)

### In re OGDEN'S ESTATE.

(Surrogate's Court, Rensselaer County. June, 1903.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—REAL ESTATE—MANAGEMENT —EXPENSES—ALLOWANCE.

Where a will partially disposed of real estate and personal property worth $63,000, appointed an executrix with power to sell, and gave and devised to her one-half of all the property, but gave her no control over the real estate, the executrix was not entitled to an allowance for expenses in managing the estate.

2. SAME—FUNERAL EXPENSES.

Where testatrix died, leaving personal property worth over $40,000, and real estate of the value of $23,000, an allowance of $495 for funeral expenses was proper.

3. SAME—EXPENSE OF PROTECTING PROPERTY UNTIL THE APPOINTMENT OF AN ADMINISTRATOR.

Where testatrix died seised of a large amount of personal property and real estate, an allowance to the executrix's husband of $300 for protecting the property for six months, until a temporary administrator was appointed, during a contest of the will, was proper.

4. SAME—SERVICES PERFORMED FOR EXECUTRIX.

A claim of the husband of the executrix for services in caring for real estate of testatrix, and for services as to testatrix's personalty, which the executrix should have· performed herself, could not be allowed to the executrix on the settlement of her account.

5. SAME—PHYSICIAN'S SERVICES.

Where a consulting physician, who was the son of the executrix, attended testratrix on 17 days, but was not the physician in charge, an allowance to the executrix for such services of $350 was excessive, and should be reduced to $150.

6. SAME—CONTEST OF WILL—ATTORNEY'S SERVICES—ALLOWANCE.

Where testatrix died, leaving an estate valued at over $63,000, and on contest of her will the executrix employed two counsel, of recognized reputation and ability, who defended such contest successfully, an allowance of $4,000 each to such counsel would be sustained.

7. SAME.

Where a will devising both personal and real estate was contested, the expenses of the contest and those of administration were chargeable against the personal estate, though, under a failure of the will to have disposed of it, one-half of the personal estate would have passed to the next of kin.

---

¶ 4. See Executors and Administrators, vol. 22, Cent. Dig. § 438.

Judicial settlement of the accounts of Mary F. Fairweather as executrix of the estate of Mary L. Ogden, deceased. On objections to the account. Certain objections sustained, and decree accordingly.

Justin Kellogg (L. E. Griffith, of counsel), for executrix and petitioner.

Edward H. Leggett, John H. Burke, and Edward M. Tompkins, for next of kin.

Eugene Bryan, special guardian.

HEATON, S. Judicial settlement of the accounts of Mary F. Fairweather as sole executrix of the will of Mary L. Ogden, deceased. Objections by many next of kin, which objections have been tried.

Mary L. Ogden died March 2, 1899, leaving a will, which was offered for probate soon after, and which was contested before the surrogate, admitted to probate April 5, 1900, affirmed by the Appellate Division, and decree of affirmance entered January 9, 1901. 68 N. Y. Supp. 1144. September 13, 1899, letters of temporary administration were issued to Henry B. Dauchy, who on October 27, 1899, filed his inventory of personal estate, showing $37,665.09. Letters testamentary were issued to Mary F. Fairweather April 5, 1900, and on April 16th said temporary administrator accounted, and turned over to such executrix personal property inventoried at $40,062.26. The deceased also left real estate estimated at a value of $23,000.

The will of Mary L. Ogden appoints Mary F. Fairweather executrix, and gives her one-half of her estate, in the following words:

"Second. I hereby nominate and appoint Mrs. Alexander Fairweather of Troy aforesaid to be the sole executrix of this my last will and testament hereby authorizing and empowering her to lease, and to sell at public or private sale, any and all real property of which I shall die seized or possessed, or to which I have any claim, and to execute and deliver proper conveyances of the same to the purchasers thereof. Third. I give, devise and bequeath to Mary F. Fairweather one-half of all my property."

The determination of most of the questions raised on this accounting depends on the rights and duties of the executrix under this will as to the real estate left by the deceased. The executrix claims a credit for disbursements made in leasing and managing the real estate. If she had no duty as executrix to lease, manage, and control the real estate she should not be allowed for such disbursements, as the Surrogate's Court is not constituted for the settlement of the accounts of real estate agents. As to one-half of the real estate the will is silent, and therefore such real estate descended upon the death of Miss Ogden to her heirs at law. The will does not give the rents to any person, does not direct a valid accumulation of the rents, and does not create a valid trust of such rents; neither are the rents included in the account filed. Any allowance for expenses connected with the real estate must therefore be paid from the personal estate, should such allowance be made in this accounting. The pending partition action is the proper proceeding in which to settle questions of rents and expenses of real estate management. The Surrogate's Court has no jurisdiction over realty left by a decedent,

or its avails, unless brought within it by a will or by a statute for the purpose of being dealt with for some special purpose. Sweeney v. Warren, 127 N. Y. 426–435, 28 N. E. 413, 24 Am. St. Rep. 468.

In the case at bar it is claimed that some of the persons who share in the personal estate have a greater interest than others in particular parcels of the real estate, and this furnishes an additional reason why the rents should not be accounted for in this court. But it seems clear that Mrs. Fairweather, as executrix, had no duty to perform in relation to renting the real estate, and whatever she did in relation to the same she did as an owner in common with others, and not as executrix of the will of Miss Ogden. There is abundant authority for the settlement of this question in the partition action. Brown v. Mount, 54 App. Div. 605, 66 N. Y. Supp. 1000.

The objections made to various disbursements by the executrix are directed principally to those expenses of administration created by the executrix. The burden of proving the justice and necessity of such disbursements rests on her. Matter of Hosford, 27 App. Div. 427, 50 N. Y. Supp. 550; Matter of Peck, 79 App. Div. 296, 80 N. Y. Supp. 76.

Objection is made to a payment of $495 for funeral and burial expenses. It appears from the voucher filed that this bill includes burial expenses at the cemetery, carriages at the funeral, flowers, music, and other necessary incidental expenses in addition to the casket. The charges are not unusually large, and the funeral seems to have been in keeping with the station in life of the deceased. The objections are overruled and the credit allowed.

Objection is made to payment of $300 to Alexander Fairweather, husband of the executrix, for services rendered in preserving, protecting, and caring for the property of deceased from the time of her death to the date of the appointment of the temporary administrator, a period of about six months. The deceased had no near relatives. She left a large city residence, several pieces of tenement property, securities, etc. It was necessary for the interests of all parties that some one should immediately take charge of and protect this property until the heirs to the real estate could be found, and until some one was duly authorized to take possession of the personal estate. For these reasons the objections to this item are overruled and the credit allowed.

Objection is made to the payment of $1,075 to Alexander Fairweather for services rendered by him from the date of the appointment of his wife as executrix to the date of making the account. The evidence shows that such services were rendered in looking after renting, collecting rents, repairing, paying taxes, etc., in connection with the several pieces of real estate left by the deceased, and in collecting interest and dividends from 15 securities comprising the invested personal estate of the deceased as it came to the hands of the executrix, and in keeping the estate accounts. It is claimed that this labor should have been performed by the executrix herself. The general rule is that executors are not only bound to assume the responsibility and exercise the discretion of their office, but must also perform, within reasonable limits, the actual manual labor required by the due

execution of the trust; but the courts have been careful not to insist that so much clerical work should be either personally performed by an executor, or paid for by him, as to make the acceptance of such a position impossible without considerable personal loss. Matter of Harbeck (Sup.) 30 N. Y. Supp. 521. Mrs. Fairweather has for several years been in very poor health, so that she could not have performed the services rendered by her husband in connection with the real estate. But as has been shown, she had no duty as executrix in regard to the real estate, and what she did or caused to be done in managing the real estate she did as a tenant in common with the other owners; and her accounts in connection with the same she must settle with the other owners, or in the partition suit now pending. There were but 15 securities which came to the hands of the executrix. If interest or dividends were paid upon these semiannually, the labor of receiving such payments and keeping an account of the same was not so great or arduous that, under the well-established principle, the executrix should be allowed to charge the estate for the services of her husband in connection therewith. The objections to this item of $1,075 are sustained, and credit therefor disallowed.

Objection is made to the payment of $350 to Dr. Fairweather for services rendered from February 19 to March 8, 1899; being for 11 days before, and 6 days after, the death of deceased. He is a son of the executrix. He was present much of the time during Miss Ogden's short illness, but was not the physician in charge. There was also a nurse in attendance. After Miss Ogden's death he took charge of the funeral arrangements. This payment is clearly excessive, and the objections are sustained to the extent of $200, and the credit allowed at $150.

Objection is made to the payment of $250 to Dr. M. F. Phelan, the attending physician of the deceased. The evidence shows that Dr. Phelan devoted most of his time to deceased during her illness, and was in attendance both night and day; that he refused other business and gave up his office hours. Under the circumstances, the charge is not excessive. The objections are overruled and the credit allowed.

Objection is made to the payment of $4,000 to Ex-Judge L. E. Griffith as counsel fees in the will contest and in other litigations, and concerning other legal questions which have arisen. There appeared for the contestants of the will several lawyers of recognized ability, and with them was associated Atty. Gen. Hancock. It was therefore not improper that, if the executrix desired to employ counsel, she should secure the services of an able and astute lawyer. The ability, long experience, and standing at the bar of such counsel must be taken into consideration in considering whether or not his charge was excessive. It is not enough to say that less expensive or less able counsel might have been employed, or that not a great number of days were actually occupied in taking testimony. The professional standing of the counsel employed, the amount involved in the litigation, the nature of the services rendered, and to some extent the result which has been reached, all tend to sustain the payment made. Garfield v. Kirk, 65 Barb. 468; Gross v. Moore, 14 App. Div. 356, 43 N. Y. Supp. 945. The objections are overruled and the credit allowed.

Objection is made to the payment of $6,000 for services and disbursements of the attorney for the executrix. His services consisted in taking almost whole charge of the estate, and in doing much work that should have been performed by the executrix herself, who, on account of poor health, was not able to fully exercise the duty of her office. It is shown, also, that the services of the attorney extended to the management and control of the real estate left by deceased, over which, as has been shown, the executrix, as executrix, had no authority. No doubt, in the two ways pointed out, the attorney has spent much time, but it does not necessarily follow that such services should be paid for by the next of kin. The executrix cannot be allowed attorney's fees paid for simple and nonprofessional services, which a person of ordinary business ability might have performed. Matter of Quinn, 16 Misc. Rep. 651, 40 N. Y. Supp. 732; Matter of Arkenburgh, 13 Misc. Rep. 744, 35 N. Y. Supp. 251; Matter of Van Nostrand, 3 Misc. Rep. 396, 24 N. Y. Supp. 850. Neither can she be allowed for services of her attorney in regard to the real estate, one half interest in which was devised to her directly and absolutely, and the other half interest in which was not devised at all. There was sufficient personal estate to pay debts and expenses, so that she had no duty as executrix to perform in relation to the real estate, and she should not be credited with attorney's fees paid in relation to it. Eminent counsel was employed in all the litigation to which the executrix was subjected, and upon him necessarily fell the burden of the labor involved in such litigation. It is perhaps unfortunate that the attorney of record kept no entry or account showing the nature and extent of his services, so that consequently his evidence to sustain his charge of $6,000 is somewhat unsatisfactory. He is not able to give more than an estimate of the amount of his disbursements in connection with his employment. It is difficult, under the evidence, to fix accurately the amount which ought to be allowed the executrix for the services of her attorney in connection with the personal estate of the deceased, and the litigation which has arisen. A payment of $4,000 to such attorney for all such services and disbursements is allowed as a credit to the executrix, and as to the balance of the payment the objections are sustained.

The contestants further claim that the account of the executrix should be surcharged with two items—one for certain jewelry not inventoried, and the other for a debt due from the executrix to Miss Ogden. As to the jewelry, it has been consented that the account be surcharged with $225, as the agreed value of the same. As to the debt, it is shown by the executrix that she was the general guardian of Isabella Powell, a minor, who lived with Miss Ogden, and died in 1897. A bill was presented by Miss Ogden for the funeral expenses of the deceased, which was paid by Mrs. Fairweather; and it is claimed by her that, as part of the same transaction, a bill for the board of deceased, the minor, was presented to Mrs. Fairweather and settled, and a receipt given, which has been introduced in evidence. Ignoring the question as to whether or not Mrs. Fairweather, as executrix, could be surcharged with a debt due from her as guardian, it does not appear that she ever made an agreement with

Miss Ogden for the support of the minor, or that Miss Ogden had not at the time of her death satisfied and discharged any claim that she might have had. The objections to the account are not sustained.

Objection is made to the allowance of the expenses of administration, and particularly the expenses of the contested probate against the undivided half of the personal estate which was not bequeathed by the will, on the theory that such expense was solely for the benefit of Mrs. Fairweather. No decision of our courts has been cited upon this point. So far as the expenses of the contested probate are concerned, no doubt, Mrs. Fairweather was the person principally benefited by the probate. But it was her right and her duty to offer the will for probate, and she established it before the surrogate. She was also named as executrix, and the probate and her subsequent appointment as executrix were for the benefit of the next of kin, for whom she was a trustee of the unbequeathed assets. Wager v. Wager, 89 N. Y. 161. It was necessary to have the will established, or judicially declared to be not a valid will, before a representative of the estate could legally act in collecting and distributing the assets. Matter of Haughian, 37 Misc. Rep. 457, 75 N. Y. Supp. 932. No administrator can be appointed unless the person dies intestate. Code Civ. Proc. § 2660. Mrs. Fairweather was not acting for herself alone, but was discharging a duty which she is commanded by our law to perform, and which she owed to all the next of kin, when she offered for probate a will of which she had knowledge or possession. The reasonable expenses incurred by her are therefore chargeable upon the whole personal estate.

The amount of the transfer tax due from the legatee and from each next of kin has been practically agreed upon, and a statement thereof filed. The appeal from the order of the appraiser has been heard with this proceeding, and the order may be amended in conformity to the statement filed. The amount of such tax against each of such persons on both real and personal must be collected by the executrix, and she may do this by retaining the same from the legacies or distributive shares.

It has been suggested that Mrs. Fairweather is entitled to two shares in the unbequeathed personal estate, because both her father and mother were cousins of the deceased. As all of the class in which were her father and mother are dead, and Mrs. Fairweather belongs to the class of next of kin nearest to the deceased, she takes in her own right, and not in the right of her father and mother, and therefore takes but one share.

Decreed accordingly.