JAMES SWEENEY et al., Appellants, *v.* PHOEBE JANE WARREN et al., Respondents.

Where a testator authorizes his executor to sell and convert into money all or a part of his realty for a specific purpose, which fails or is accomplished without a conversion, the power is extinguished and the land cannot be sold by virtue of it or treated as personalty, but descends to his heirs, unless it is devised.

The personal estate of a testator will not be discharged from the payment of debts, unless it clearly appears by the will that he so intended. This will not be inferred simply from the fact that authority is given to sell all or some part of the real estate for the payment of debts, especially in a case where no disposition is made of the personalty.

In order to create a valid power, either beneficial or in trust, it is indispensable that the object or objects to be accomplished by its execution shall be specified in or clearly ascertainable from the instrument by which the power is attempted to be created.

When a power is conferred upon executors by virtue of the office, and not upon them as individuals, in the absence of evidence that it was intended to be beneficial to them, the presumption is that it was given for the purpose of being executed in the interest of the estate and not for their own benefit.

S. died, leaving a widow and several collateral relatives, his heirs and next of kin. By his will he authorized his executors to sell and convey certain real estate described, and expressed his desire that this should be done, and that "the said land shall be sold in a body for commercial purposes." After various specific devises, by the concluding clause of the will he authorized and directed his executors to sell the land specified, and another parcel of land described, "for the purpose of discharging all" his debts. The will contained no residuary clause, and made no disposition of the testator's personal estate or the avails of the two pieces of real estate, unless used for the payment of debts. The land first specified was sold and conveyed by the surviving executor to the widow; at the time both parties knew that the testator's personal property was more than sufficient to pay all debts and expenses of administration; the widow did not pay the purchase-price, but simply receipted therefor as so much personalty. In an action of ejectment brought by the heirs at law against the widow, *held* (VANN, J., dissenting), that the direction to sell for the payment of debts did not operate to convert the land into personalty, and, not being specifically devised, it descended to the heirs; that the personal estate was not exonerated from the payment of the debts, but, being primarily liable, must be first exhausted; that the sale could not be sustained under the first clause; that no power in trust was created thereby as no purpose was to be accomplished; or

any persons or class of persons to be benefited by the sale; nor could the clause be construed as creating a beneficial power, as no power was sought to be conferred on the executors for their own personal benefit, but only for the purpose of administering the estate, which purpose has failed.

After payment of debts and expenses, there remained in the executors' hands a surplus arising from the personal estate. On the final settlement of the executors' accounts, all the heirs, including plaintiffs, were cited to appear; the account was settled and the sum arising from the sale of said real estate was treated and disposed of as personalty. *Held*, that the proceedings in the Surrogate's Court did not estop the heirs or bar them from the maintenance of this action.

*Sweeney* v. *Warren* (52 Hun, 246), reversed.

(Argued June 9, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department in favor of defendants, entered November 21, 1889, upon a verdict directed subject to the opinion of the court at General Term.

This was an action of ejectment.

On October 12, 1854, John Sweeney died, leaving Caroline Sweeney, his widow, and several collateral relatives who were his heirs at law and next of kin. He left a will executed October 9, 1854, which was probated December 26, 1854, and letters testamentary were then duly issued thereon to the two executors nominated therein, who immediately entered upon the execution of their trust and continued therein until 1856, when one of them died, and thereafter the survivor discharged the duties imposed by the will on both executors. In the first division of the will the testator devised two village lots to his wife in fee, and a life estate in a farm of sixty acres and the stock thereon in lieu of dower.

In the second division the testator provided: "Second. I hereby direct and authorize my executors hereinafter named to sell and convey to the New York Central Railroad Company a certain strip of land (described)    *    *    *    on condition and in consideration that the said railroad company fulfill the agreement and contract made by them with the heirs of James Sweeney.

" I also desire and authorize my executors to sell and convey all that part of block F on the Niagara river (particularly described)   *   *   *   and it is my desire that the said land shall be sold in a body for commercial purposes." Then follows in this division thirteen specific devises, and also a devise of the remainder of the sixty-acre farm subject to the life estate of the wife. Near the end of the will, and in the second division, is the following provision : " I authorize and direct my executors to sell and convey (the land directed to be sold for commercial purposes), and also that piece of land on Sweeney street east of the building known as the shoe shop, for the purpose of discharging all my debts." The will contained no residuary clause, and makes no disposition of the testator's personal estate, nor of the avails of the two pieces of real estate directed to be sold, unless used in payment of debts. The testator also died seized of four other parcels of land, worth about $3,500, which were not disposed of by his will. January 27, 1855, the surviving executor sold and conveyed to the testator's widow the land in block F for $500, at which time the executor and widow knew that after payment of all debts and expenses of administration there was a surplus of more than $1,200 arising from the personal estate. On the 10th of March, 1874, this action of ejectment was begun by the testator's heirs at law against Caroline Sweeney to recover possession of the lot purchased by her. Subsequently Mrs. Sweeney died, leaving a will which was admitted to probate, and her executors were substituted as parties defendant in her stead.

Further facts appear in the opinion.

*Sherman S. Rogers* for appellants. The power of sale contained in the will was merely a power to sell for the purpose of paying the debts of the testator. (Redf. on Surr. 253 ; 1 Sugd. on Powers, 115 ; *Kinnier* v. *Rogers*, 42 N. Y. 531 ; *McCarty* v. *Terry*, 7 Lans. 236 ; *Quin* v. *Skinner*, 49 Barb. 129 ; *Wood* v. *Keyes*, 7 Paige, 364 ; *Fisher* v. *Banta*, 66 N. Y. 468 ; *Crittenden* v. *Fairchild*, 41 id. 289 ; *Chamberlain*

v. *Taylor*, 105 id. 194.)   If not for the payment of debts the power was null and void.   Except as a power to pay debts, it cannot be upheld under the provisions of the Revised Statutes. (*Cutting* v. *Cutting*, 86 N. Y. 522; 1 R. S. 732, §§ 73, 76, 79, 94; *Kinnier* v. *Rogers*, 42 N. Y. 531; *Chamberlain* v. *Chamberlain*, 105 id. 194.)   The personal property constituted the primary fund for the payment of the debts.   As that was far more than was necessary to discharge the debts the power of sale was not operative and no title passed by the executor's deed.   (2 Perry on Trusts, §§ 562, 567; 4 Kent's Comm. 421; 2 Jarman on Wills [5th ed.] 652, 653; *Heermans* v. *Robertson*, 64 N. Y. 341; *Hoes* v. *Van Hoesen*, 1 id. 120; *Kelsey* v. *Western*, 2 id. 500, 507; *Bevan* v. *Cooper*, 72 id. 317; *Ancaster* v. *Mayer*, 1 Bro. Ch. 454; *Hancox* v. *Abbey*, 11 Ves. 180; *Gray* v. *Minnethorpe*, 3 id. 103; *Hartley* v. *Hurle*, 5 id. 540; *Newbegin* v. *Bell*, 23 Beav. 386; *Hoyt* v. *Hoyt*, 85 N. Y. 142; *Scott* v. *Stebbins*, 91 id. 605; *Le Fevre* v. *Foote*, 84 id. 95; *McCorn* v. *McCorn*, 100 id. 511; *Brill* v. *Wright*, 112 id. 129.)   The power to sell being for the purpose of paying debts, and not in exoneration of the personalty *pro tanto*, the sale was not valid.   (1 R. S. 730, 735, §§ 67, 102.)

*E. C. Sprague* for respondents.   The provision of the will, by which the testator authorizes and desires his executors to sell and convey the property in question in a body for commercial purposes, *per se*, authorizes the executors to sell, and this authority is not affected by the provision in respect to the payment of debts.   This clause amounts to a peremptory direction.   (*Le Fevre* v. *Toole*, 84 N. Y. 95; *Taylor* v. *Martin*, 8 Atl. Rep. 920; *Arnold* v. *Gilbert*, 5 Barb. 190; *Freeman* v. *Coit*, 96 N. Y. 63, 68; *Roseboom* v. *Roseboom*, 81 id. 356; *Roe* v. *Vingut*, 117 id. 204; *Ogsbury* v. *Ogsbury*, 45 Hun, 388; *Price* v. *Cole*, 1 S. E. Rep. 201; *Covenhoven* v. *Shuler*, 2 Paige, 122; *Van Vechten* v. *Keator*, 63 N. Y. 55; *Van Nostrand* v. *Moore*, 52 id. 12; *Clarke* v. *Leupp*, 88 id. 228; *Cuthbert* v. *Babcock*, 2 Dem. 96; *Harrison* v. *Jewell*, Id. 37.) The clause authorizing and directing the sale and conveyance

of the land in question for the purpose of discharging all the testator's debts, was intended by the testator as a direction to sell the land for that purpose in exoneration of the personalty as far as it would go. (*McCorn* v. *McCorn*, 30 Hun, 171; 100 N. Y. 511; *Le Fevre* v. *Toole*, 84 id. 95; *Hamilton* v. *Smith*, 46 Hun, 651; *Scott* v. *Stebbins*, 91 N. Y. 605; *Clift* v. *Moses*, 44 Hun, 312, 318, 319; *Dodge* v. *Pond*, 23 N. Y. 69; *Brink* v. *Masterson*, 4 Dem. 524; *Solomon* v. *Lawrence*, 20 J. & S. 154; *Arrot* v. *Gilbert*, 5 Barb. 190; *Stimson* v. *Vrooman*, 99 N. Y. 74, 79; *Thurber* v. *Chambers*, 66 id. 42; 4 Hun, 721; *Wood* v. *Mitchan*, 92 N. Y. 375; *Willse* v. *Shaw*, 10 id. 191.) A sale for the payment of debts is valid, and whether the proceeds shall be used in aid of the personalty, is a question of distribution. (*White* v. *Howard*, 46 N. Y. 162; *Canfield* v. *Crandall*, 4 Dem. 111; *Compton* v. *McMahon*, 2 West. Rep. 186; *Moncrief* v. *Ross*, 50 N. Y. 431; *Loring* v. *Burney*, 3 How. Pr. [N. S.] 143; *Ogsbury* v. *Ogsbury*, 45 Hun, 388, 389; *Clift* v. *Moses*, 44 id. 312, 318, 319; *Mott* v. *Ackerman*, 92 N. Y. 539; *Tickell* v. *Quinn*, 1 Dem. 425; *Lent* v. *Howard*, 89 N. Y. 169; *Wetmore* v. *Peck*, 66 How. Pr. 54; *Lyons* v. *Mahan*, 1 Dem. 180; *Powers* v. *Cassidy*, 79 N. Y. 602; *Chamberlain* v. *Taylor*, 105 id. 185.) The land in question was sold for the purpose of discharging all the testator's debts within the terms of the will. It was enough if the effect of the sale was to aid in paying the debts, although it did not sell for enough to pay them all. The transaction with Mrs. Sweeney was equivalent to a sale for cash. (*Dodge* v. *Stevens*, 94 N. Y. 209, 214; *Livingston* v. *Newkind*, 3 Johns. Ch. 312, 318; *Harrington* v. *E. C. S. Bank*, 101 N. Y. 264.) The heirs were barred by the citations and settlement of the executor's accounts. (3 R. S. [6th ed.] 120, §§ 75, 79; *Stagg* v. *Jackson*, 1 N. Y. 206; *M. L. Ins. Co.* v. *Schwaner*, 36 Hun, 373; *Dodge* v. *Stevens*, 94 N. Y. 209, 214; *Erwin* v. *Loper*, 43 id. 521; 6 Wait's Act. & Def. 715; *W. C. Co.* v. *Hathaway*, 8 Wend. 480; *Creque* v. *Sears*, 17 Hun, 123; *Raynor* v. *Timerson*, 46 Barb. 518.)

FOLLETT, Ch. J.   In considering the questions involved in this appeal it will be convenient to examine separately the two clauses which, it is asserted, gave the executor power to sell the lot sought to be recovered.   The clause contained in the latter part of the will provides: "I authorize and direct my executors to sell and convey the strip of land heretofore mentioned and described as lying on the Niagara river, and also that piece of land on Sweeney street and on the Tonawanda creek, east of the building known as the shoe-shop, for the purpose of discharging all my debts."   By this provision the lots mentioned are not converted into money out and out, but the executors are empowered to convert them for a specific purpose, to wit, the payment of the testator's debts.   When a testator authorizes his executors to sell and convert into money all or a part of his realty for a specific purpose, which fails, or is accomplished without a conversion, the power is extinguished and the land cannot be sold by virtue of it or treated as money, but it descends to the heir unless it is devised. ( *Wood* v. *Keyes,* 8 Paige, 365 ; *McCarty* v. *Terry,* 7 Lans. 236 ; *Jackson* v. *Jansen,* 6 Johns. 73 ; *Sharpsteen* v. *Tillou,* 3 Cow. 651 ; *Bogert* v. *Hertell,* 4 Hill, 492 ; *Hetzel* v. *Barber,* 69 N. Y. 1 ; *Read* v. *Williams,* 125 id. 560 ; *Hill* v. *Cook,* 1 Ves. & B. 175 ; *Chitty* v. *Parker,* 2 Ves. 271 ; *Taylor* v. *Taylor,* 3 DeG., M. & G. 190 ; Leigh & D. Conv. 93 ; Lewin on Tr. [8th ed.] 149, 953.)   When the executor sold the lot, both he and the purchaser knew that the testator's personal property exceeded by more than twelve hundred dollars the testator's debts and the expenses of administration, which defeated the power to sell under this clause unless, as it is argued, the testator intended that these lots should be sold and the avails applied towards the payment of his debts for the purpose of relieving to that extent the personal estate from the burden imposed by the rule of the common law, that it is primarily liable for the payment of debts, and must be first exhausted unless there is a clear direction that the real estate, or some part of it, shall be first so applied.   This question was considered in *Heermans* v. *Robertson* (64 N. Y. 332), where it

is said : " The order of marshaling assets for the payment of debts is to apply, first, the general personal estate; second, estates specially devised for the payment of debts; third, estates descended; fourth, estates devised, though generally charged with the payment of debts. (2 Williams on Ex. 1526, note 2; *Livingston* v. *Newkirk*, 3 J. C. 312; 4 Kent's Commentaries, 420.) In order to effect a change in the order. there must be some absolute and positive direction, clearly indicating an intent to relieve the class of assets primarily liable, and to charge some other portion of the estate in exoneration of the funds and property primarily liable. A mere direction to an executor to sell real estate does not make the proceeds necessarily liable as personal assets, but they will be only applicable to the payment of debts when the assets, personal in their character, shall have been exhausted." (Page 344.) Before the personal estate of a testator will be discharged from the burden of paying the debts, it must clearly appear that he intended that it should be, which will not be inferred from the fact that authority is given to sell all or some part of the real estate for the payment of debts, and especially in a case where, as in this, no disposition is made of the personalty. (*Gray* v. *Minnethorpe*, 3 Ves. 103; *Hartley* v. *Hurle*, 5 id. 540; *Hancox* v. *Abbey*, 11 id. 179.) Under this clause the executor had no power to sell the lot in question.

It remains to be considered whether the sale can be sustained under the power contained in the earlier part of the will, which provides: " I also desire and authorize my executors to sell and convey all that part of block F on the Niagara river, running back from said river to a continuation of the west line (to the north) of a projected canal as laid down on a map made by Augustus Canfield, on lot or block G, being nearly on a parallel line with the said Niagara river, and it is my desire that the said land shall be sold in a body for commercial purposes."

Powers, as they existed prior to January 1, 1830, were abolished by article third " Of Powers," of title two of chapter one of the second part of the Revised Statutes (§ 73), which

article was intended to be a codification of the law under which powers were thereafter to be created, governed and construed. (*Cutting* v. *Cutting,* 86 N. Y. 522 ; *Hutton* v. *Benkard,* 92 id. 295, 305.) As to beneficial powers, it is enacted by the ninety-second section that none except those enumerated in the article shall be valid.

"A power is an authority to do some act in relation to lands, or the creation of estates therein, or of charges thereon which the owner, granting or reserving such power, might himself lawfully perform." (§ 74.) All powers are divided into two general classes, beneficial powers and powers in trust. " A * * * power is beneficial when no person other than the grantee has, by the terms of its creation, any interest in its execution." (§ 79.) " A * * * power is in trust when any person or class of persons other than the grantee of such power is designated as entitled to the proceeds, or any portion of the proceeds, or other benefits to result from the alienation of the land according to the power." (§ 94.) These powers are subdivided into general and special powers. " A power is general when it authorizes the alienation in fee * * * of the lands embraced in the power to any alienee whatever." (§ 78.) Special powers are defined in the seventy-eighth section, but it is unnecessary to call attention to the definition, as it is agreed by counsel and is clear that the power claimed to be created is a general one.

To create a valid power, either beneficial or in trust, it is indispensable that the object or objects to be benefited by its execution shall be specified in or be clearly ascertainable from the instrument by which the power is attempted to be created. (*Jennings* v. *Conboy,* 73 N. Y. 230 ; 1 Sugden on Powers, 117 [3d Am. ed.] 173 ; Farewell on Powers, 29, 401 ; Abb. Law Dict., Objects of a Power ; 4 Cruise, R. P. chap. 19, § 32 ; vol. 2, Green. ed. 294, § 32.) For the creation of a valid power in trust it is essential that its execution be beneficial to some person, or class of persons other than the grantee of the power, who can compel the due execution of the trust, which person or class of persons must be designated in or be clearly

ascertainable from the instrument by which the power is created. (1 R. S. 734, § 94; *Read* v. *Williams*, 125 N. Y. 560.) As this will discloses no purpose to be accomplished, nor any person or class of persons to be benefited by the alienation of the land under the clause last quoted, a valid power in trust was not created by it.

Does the clause create a beneficial power? When a power is conferred upon an individual (not upon a trustee), and no person other than the grantee of the power has an interest in its execution, it is beneficial; and so, a power is beneficial when it is silent as to the person to be benefited by its execution. (*Jennings* v. *Conboy*, 73 N. Y. 230.) Undoubtedly a power may be vested in executors, as such, to be exercised for their own benefit as individuals, which would be a beneficial one; but when a power is conferred upon executors by virtue of their office, and not on them as individuals, there being no other evidence that it was intended to be beneficial to them, the presumption is that it was given for the purpose of being executed in the interest of the estate, and not for their own benefit. In this case the power sought to be conferred by this clause runs to the executors in their respective capacity, and not to them as individuals, and it is clear that the testator did not intend to confer a power on his executors for their personal benefit, but for the purpose of administering his estate, which purpose has failed, as before shown. No such beneficial power as is claimed to exist under this clause is authorised or enumerated in the article relating to powers, and consequently the clause in question does not create a valid beneficial power. (1 R. S. 733, § 92.) No valid beneficial power or valid power in trust being created by this clause, and the purpose for which the power was given in the clause first considered having failed before the land was conveyed, no title was acquired under the conveyance executed by the executors.

After paying the debts and expenses of administration there was in the executor's hands, arising from the personal estate, a surplus of $1,292.92, and $180 received from George H. Bryant

for the lot sold to him, which sums, amounting to $1,472.92, were, May 25, 1857, paid over to the widow, who, at that time receipted therefor and also for the $500 due from her on the purchase of the lot in question, which three sums amounted to $1,972.92. In September, 1857, the executor applied to the Surrogate's Court for a final settlement of his accounts and a citation was duly issued and personally served on all the heirs, next of kin and persons interested in the estate, including these plaintiffs, to attend such final settlement. On the 14th of September, 1857, the account as presented was settled, the two sums amounting to $680, arising from the sale of real estate, was treated as personalty, and the payment of May 25, 1857, to the widow was ratified and confirmed upon the theory that the testator not having bequeathed his personalty, and not having left descendants, his widow was entitled to the residue of the personalty, unless it exceeded $2,000. Whether any of the persons interested in the estate were present, or were represented on the accounting, does not appear.

It is now insisted in behalf of the defendants that the heirs are estopped by the proceedings in the Surrogate's Court from maintaining this action for the recovery of the land.

A Surrogate's Court has no jurisdiction over realty left by a decedent, or its avails, unless brought within it by a will, or by a statute for the purpose of being dealt with for some special purpose, like the payment of debts in case the personalty is inadequate for that purpose, and therefor there is no judicial estoppel by a court having jurisdiction. None of the elements of an equitable estoppel or of an estoppel *in pais* have been pointed out by the learned counsel for the respondent, nor have we discovered any. The sale was not induced by the conduct of any of the heirs. The widow, who purchased the lot, never changed her position, nor have her executors, the defendants, changed theirs by reason of any act done or omitted by the heirs. She paid nothing and parted with nothing in exchange for the deed which she took. It is true she agreed to pay $500, but she did not, that sum being charged as paid to her by the executor in his final account.

There is nothing in the record showing any expenditure or change made, or steps taken in respect to the property since the final accounting. The defendants are not purchasers of the lot for value, nor are they the representatives of one who purchased for value, relying upon the proceedings of the Surrogate's Court and the acquiescence of the heirs.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Vann, J. (dissenting). The will in question was made by the testator but three days before his death and in anticipation of that event. He could not, therefore, have expected that any change in his estate would take place before he died and there was no proof of any. He was a man of good business ability, conversant with his business affairs and, therefore, presumed to know that his personal property was more than sufficient to pay his debts. In common with all men, he is presumed to have known the law, and hence, to have known that his personal property would be first used to pay his debts, unless he directed otherwise. His will should be interpreted in the light of these presumptions, and his intention, when thus ascertained, carried into effect, due regard being paid to the rule that if the will is capable of two constructions, one leading to a legal and the other to an illegal result, the former is to be preferred. (*Crozier* v. *Bray*, 120 N. Y. 366, 375 ; *DuBois* v. *Ray*, 35 id. 162.)

The paragraphs of the will that require construction are in these words : " I also desire and authorize my executors to sell and convey " the premises in question, " and it is my desire that the said land shall be sold in a body for commercial purposes." In a later clause, after appointing executors, he adds " and I authorize and direct my executors to sell and convey " said premises with another piece of land " for the purpose of discharging all my debts." His desire that the land should be sold for commercial purposes is not inconsistent with his direction that it be sold to pay debts, because, even if the former is not in the nature of a recommendation merely, both desire

and direction could be satisfied by the same act and probably a higher price thereby realized. It will be observed that he directed his executors to sell the real estate for the purpose of paying *all* his debts. The use of the word " all " indicates the intention that no part of his personal property should be used to pay debts, provided the proceeds of this real estate were sufficient for that purpose. Adequate force can be given to that word in no other way than by holding that every debt was to be discharged through a sale of this land if possible. It was not a direction to sell and pay debts in order to provide against a possible deficiency of personal assets, but to sell " for the purpose of discharging all " his debts. " All," as thus used, means the whole and not the remainder after application of the personal property. He directed a certain act to be done and specifically stated the purpose of that act and the act and purpose necessarily involved the exoneration of the personal property from the payment of debts, either absolutely or *pro tanto*. This was the natural and necessary result of the act directed with the purpose indicated. It was not essential for him to state that he gave that direction with that purpose, for the further purpose of relieving his personal property, because if all his debts were paid his personal property would necessarily be relieved and the last purpose was, therefore, included in the first. This construction prevents partial intestacy ( *Vernon* v. *Vernon*, 53 N. Y. 351), prefers the widow to collateral heirs, gives effect to a clause which otherwise would be inoperative, and is in harmony with the practical construction of the heirs themselves, who not only acquiesced in the settlement of the executors' accounts based upon the sale as made under the will, but even waited for nearly twenty years after the death of the testator before they brought this action, claiming to have inherited the land from him. It is no longer necessary to use express words in order to exempt personal property from the payment of debts, but " it is sufficient," as was said by the court in *Hoes* v. *Van Hosen* (1 N. Y. 120, 122), " if there appears upon the will an evident demonstration, a plain intention, or a necessary implication."

I think that the direction to pay all the debts from a certain fund, by " necessary implication," prohibits the payment of any debt from any other fund, until the former is exhausted, and I am, therefore, compelled to dissent from the judgment rendered by my associates and to vote in favor of affirming the judgment appealed from.

All concur with Follett, Ch. J., except Vann, J., dissenting, and Haight, J., not sitting.

Judgment reversed.