T. W. MEWBORN, Executor of Mrs. Sarah L. Askew, v. L. C. MOSELEY.

(Filed 3 January, 1919.)

### 1. Wills—Direction—Sale of Realty—Debts—Personalty Sufficient.

A will directing the executor to sell all of the testator's real and personal property and pay all funeral expenses and just debts, "giving and devising" a certain sum of money to each of his brothers and sisters in Item 2, and in Item 3 "giving and devising" equally to his heirs, naming them "the balance of his estate: *Held*, the testator is presumed to have known the kind and value of his property with relation to his debts, and that his personalty would be sufficient to pay his debts without resorting to a sale of his realty, and the mandate to sell all of the real and personal property should be complied with and the proceeds distributed as directed in the will.

### 2. Wills—"Give and Devise"—Intent.

Where it appears from the terms of the will by the indiscriminate use of the words "give and devise" that the testator intended them to apply to his realty, the will, in that respect, will be so construed.

### 3. Wills—Power of Sale—Implied Power—Deeds and Conveyances.

The power of an executor to make a deed is implied by an express mandate in the will to sell the testator's lands.

### 4. Wills—Power of Sale—Election—Reconversion.

Where the executor has sold lands under a power contained in the will without giving the devisees the right to take it in its original state, the equitable right of reconversion does not arise.

APPEAL by defendant from *Allen, J.*, at chambers, 6 December, 1918, of LENOIR.

This is a controversy without action, submitted upon a case agreed, under Revisal, sec. 803.

Mrs. Sarah L. Askew died, leaving a will as follows:

"I, Sarah L. Askew, of the aforesaid county and State, being of sound mind, but considering the uncertainty of my earthly existence, do make and declare this my last will and testament:

"1. My administrator hereinafter named shall sell all of my real and personal property and pay all funeral expenses, together with all my just debts, out of the first moneys which may come into his hands belonging to my estate.

"2. I give and devise to each of my brothers and sisters fifty dollars.

"3. I give and devise equally to my heirs hereinafter named the balance of my estate: Fannie L. Jackson, Mary V. Jackson, Nonie E. Barker, Hildah W. Baxton, Charlie B. Whitfield, Paul Holland, Leonard Fields, William Askew Barker, Bertha W. Edwards.

"4. I hereby constitute and appoint my friend T. W. Mewborn my lawful administrator to all intents and purposes to execute this my last

will and testament, according to the true intent and meaning of the same, and every part and clause thereof, hereby revoking and declaring utterly void all other wills and testaments by me heretofore made.

"In witness whereof, I, the said Sarah L. Askew, do hereunto set my hand and seal, this 4 February, 1916.

"SARAH L. ASKEW.  (SEAL)"

The will was properly executed and attested, duly admitted to probate, and the executor (called administrator), who is the plaintiff herein, qualified as such. He sold all the land at public sale, under the power contained in the will, and the defendant became the purchaser at $32,200 and plaintiff tendered to him a good and sufficient deed for the land, but he refuses to accept the same, alleging that the plaintiff, as executor, had no power to sell the land, there being personal property of the testatrix sufficient to pay the debts and specific legacies and costs of administration. The court held that the executor had the power to sell, and gave judgment for the plaintiff.

*Rouse & Rouse for plaintiff.*
*Dawson, Manning & Wallace for defendant.*
*Cowper, Whitaker & Hamme for defendant J. D. Mason.*

PER CURIAM. The will provides that the executor shall sell *all* of the real and personal property, and we do not see why these words should not have their primary or ordinary meaning and require the executor to do what the language so clearly directs that he shall do. 40 Cyc., 1396, 1397. The testatrix is presumed to have known the kind of property she owned, and the value of it, when she made the will, and she knew, therefore, that her personal property would pay all debts, costs and expenses, and legacies, and yet she directed the sale of *all* of her property, personal and real. There is nothing in the will to show that she directed the sale merely to pay debts and costs of administration, or legacies, and to the extent only that it was necessary to do so. We must give to her language its usual meaning, and we find no restriction on the power of sale, which extended to all she had.

It may be that she entrusted the plaintiff with this broad power because of her great confidence in his integrity and sound judgment, believing he would sell the property to the best advantage. But whatever her reason, we must be governed by what she has plainly said. The use of the word "devise" in the third section of the will does not limit the power. She also used the word "give," which is appropriate to the creation of a legacy and to a devise of realty. It will be observed, too, that she uses the same words, "give and devise," in section second of the will,

where she bequeaths the pecuniary legacies of fifty dollars each to her brothers and sisters, showing that she employed them indiscriminately, or as applying to both real and personal property, without knowing their true and distinct meaning in law. She was not speaking with nicety or with strict or technical accuracy, nor was she trying to do so.

In this case the power to sell is mandatory, the direction being couched in imperative language, and it appears to have been conferred upon the executor not only to pay debts, legacies, costs and expenses, but also to effect a fair and an equal division of the balance of her estate, as shown by the third clause. 2 Underhill on Wills, 959, 960.

"The intention to require a sale is most commonly manifested by an express direction in the will that land shall be sold." 2 Underhill on Wills, 958.

Here she directs that both kinds of property, land and personal property, be sold. The intention is too clear to be disregarded. "If a testator devises land to be sold, or orders or directs that the same shall be sold, it is obvious that it is the imperative duty of the trustees to make the sale. They have no discretion in the matter. They are simply to turn the real estate into personalty and to apply the money thus realized to the purpose designated in the will." *Clifton v. Owens,* 170 N. C., 607, at p. 614; Bispham's Equity, 426. It was the purpose of the testatrix to have the entire property, real and personal, sold at all events.

When the testatrix, in the third clause of her will, used the words "I give and devise equally to my heirs hereinafter named the *balance* of my estate," she evidently referred to the residue, or what was left of it, after paying costs and expenses, debts and legacies. If she had intended to spare the land and let it go in kind, as the "balance," to her heirs, it was very easy to have so expressed her will or intention, for she well knew the exact situation and the composition and value of her estate.

While the testatrix, after requiring that all of her property of every kind be sold, directs that her debts and the costs and expenses be paid out of the first money coming into the hands of the executor, this does not necessarily imply that the sale was ordered for the purpose only of paying debts, as was the case in *Sweeney v. Warren,* 127 N. Y., 426, so much relied on by the defendant, but the direction that the debts be paid out of the first money received by the executor was merely an expression of her wish as to how the distribution should, in part, be made, which happened to be the natural and usual order of its disbursement. She desired to be just before she was generous. It was not the sole purpose of the sale, but only an incidental order as to how the fund or proceeds of the sale should be administered. This distinguishes the case from the one cited.

The executor has the power to make a deed which is incident to and

will be implied from the power to sell expressly given. *Foster v. Craige,* 22 N. C., 210; 11 R. C. L.; *Broadhurst v. Mewborn,* 171 N. C., 400. This is so because where a power is conferred all that is necessary to its proper execution goes with it. The case we have just cited also has a bearing upon the other matters which we have discussed.

There is no question as to the equitable right of reconversion. The property has been sold without any election on the part of the devisees to take it in its original state.

The presiding judge committed no error in his ruling.

Affirmed.