SYDNEY R. NEWMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3952.    Promulgated August 20, 1945.

*Frederick E. Winkler, Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: Respondent has determined a deficiency in petitioner's income tax by including in his income the income of certain trusts created for the benefit of his children. The only question is whether petitioner has such dominion over the income and the trust estate as to be deemed the real owner thereof, in which event the income would be taxable to him under the provisions of section 22 (a) as construed by the United States Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331. Recently we had occasion to consider whether the in-

come from this trust was taxable to petitioner's wife, the grantor. In *Lillian M. Newman*, 1 T. C. 921, we held that the present petitioner, as an individual, had a substantial interest in the trust estate, which interest was adverse to that of his wife, and that the income was not taxable to her under sections 166 and 167. We further held that petitioner's wife had parted with all rights of ownership and control of the trust property and that she was not the owner thereof for the purposes of section 22 (a). We further held that the trust income was not taxable to her under the rule of *Douglas* v. *Willcuts*, 296 U. S. 1; *Stuart* v. *Helvering*, 317 U. S. 154. Respondent concluded that the trust income was taxable to petitioner and determined the deficiency before us.

Respondent relies largely upon *Edward Mallinckrodt, Jr.*, 2 T. C. 1128; affd., 146 Fed. (2d) 1; *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784; and *Richardson* v. *Commissioner*, 121 Fed. (2d) 1, for the proposition that *Helvering* v. *Clifford, supra*, has not been limited in its application to cases where effort is made to tax settlors with trust income. Each of those cases involved the ownership for tax purposes of trust income by persons other than the grantors. In each case it was held that the taxpayer, because of his power and control over the trust property and the trust income, was taxable as the owner. However, in our opinion, the same conclusion is not justified here. In the *Mallinckrodt* case the petitioner had power to take all trust income except $10,000, and to take the trust corpus upon terminating the trust. In the *Richardson* case also the petitioner had power to take trust corpus upon termination by him of the trust. In the *Jergens* case the petitioner could withdraw all trust corpus, except that in case of certain insurance the trustor's consent was necessary.

Here, however, though the petitioner (not the settlor) could revoke the trust agreement in whole or in part and could alter or amend it, or free any property from its terms, he had, in our view, no power, as in the cases above mentioned, himself to receive the benefit of such action, either as to income or trust corpus. It is clear that the trust instrument contains no specific grant to him of such right, and we do not understand that it is so contended. Revocation alone would, of course, revest the trust corpus in the grantor; and upon any property being freed from the terms of the trust, by the petitioner, such property is required to be turned over to the grantor.

Does the general grant of power "to alter or amend" the trust confer upon the petitioner such right to take the benefit of the trust as to make him taxable upon its income? We think that a reasonable interpretation of the entire trust instrument requires a negative answer. The petitioner was given other and specific rights in the trust corpus; i. e., if living, to receive the remainder upon the death of the primary beneficiary, and to dispose of such remainder by will, or in default of testamentary disposition, to have the remainder go to his distributees, which

we interpret to mean his heirs. The grant of such specific rights to the petitioner indicates to us that the indefinite expression "alter or amend" may not reasonably be interpreted to confer upon him additional power to take over or receive the trust income or corpus. In any event, petitioner may not, by such amendment or alteration, under any reasonable interpretation, dispose of the trust corpus to himself during the life of the primary beneficiary, for during the life of such beneficiary plainly his right to the entire trust income is the first concern of the grantor, and it may not, because of a general power to amend or alter, be diverted to the petitioner. This only serves to indicate further to us that the general power to alter or amend should not be construed to confer the power to destroy the trust, so far as primary beneficiaries are concerned, by conveyance to the petitioner; and we need not consider whether the power is in the petitioner as trustee or individually, for in neither case do we consider, under reasonable interpretation, that the language used vested in the petitioner the right to convey the trust corpus, and therefore income, to himself. Without that power, he may not, under any case cited or of which we know, be considered so completely in economic control of the trust as to be taxed upon its income. To so hold in the case of one not the settlor would be to broaden unjustifiably the concept embodied in *Helvering* v. *Clifford*, *supra*. We conclude and hold that the Commissioner erred in including the trust income in that of the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL, *J.*, dissenting: The majority have construed these trust agreements as denying petitioner the right to alter or amend them for his own benefit. Their holding is predicated on the theory that the grant to petitioner of particular rights and powers under clause third negatives any other intention. It is held that "The grant of such specific rights to the petitioner indicates to us that the *indefinite* expression 'alter or amend' may not reasonably be interpreted to confer upon him additional power to take over or receive the trust income or corpus." [Italics supplied.] I can not agree that this conclusion is warranted. "Alter or amend" is not an indefinite expression and no interpretation is warranted to limit the unlimited power conferred upon petitioner to alter or amend the trusts.

Clause tenth expressly recognizes that petitioner will act in a dual capacity toward the trust property and its beneficiaries. Throughout the instrument he is not referred to by name except in clauses third and tenth. In all descriptions and enumerations of fiduciary powers and duties the word "trustee" alone is used. I think the lack of the word "trustee" is highly significant. In my opinion petitioner's power

under clause tenth to alter or amend the trust instrument is not a power in trust under New York law, because no person or class of persons has been designated as a possible beneficiary of its exercise. See Real Property Law, §§ 137 and 138, Consolidated Laws of New York. Petitioner, in his individual capacity, is empowered by clause tenth to change the beneficiary according to the dictates of his fancy and to substitute as a beneficiary thereunder whomsoever he desires. The rights of the named beneficiaries are subject to petitioner's powers as an individual under clause tenth. He could not be held accountable in any way for advising himself as trustee that he wished to substitute a beneficiary or otherwise revise the rights and interests of the named beneficiaries. But, assuming that petitioner could not secure any part of the income for himself, nevertheless his right to alter or amend the trust instruments so as to substitute beneficiaries of the trust income is sufficient, in my opinion, to warrant taxation of the trust income to him. See *Louis Stockstrom*, 3 T. C. 255; affd., 148 Fed. (2d) 491; *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784. I think petitioner's power to so alter or amend the trust instrument, when coupled with the broad powers of management and control over the trust estate, and considering the facts and circumstances surrounding the execution of the trust instrument, is sufficient to hold petitioner taxable on the trust income on the authority of *Helvering* v. *Clifford*, 309 U. S. 331.

In these *Clifford* cases all of the facts and circumstances surrounding the execution of the trusts must be analyzed. In my opinion, the whole background of the creation of these trusts clearly demonstrates a carefully, logically planned course of action, with the tax consequences of the Newman family the primary consideration. We have here an intimate family group. The husband, petitioner herein, is a successful New York attorney, with a substantial income. He admits being an experienced practitioner in the law of trusts and trust estates and in Federal tax matters. The trust agreements under consideration were prepared in petitioner's law office. He joined in the execution of the agreements as a party thereto. The trusts were of substantial economic interest to him personally aside from his interest therein from the standpoint of the welfare of his wife and children. The trusts are doubtless couched in language designed definitely and without ambiguity to serve the ends which petitioner and the grantor, his wife, intended. Petitioner is given the power to alter and amend trusts or to revoke them in whole or in part. The language used in granting such power tolerates no limitation of the scope of the power to alter or amend or to revoke the trusts. If this power is a limited power we should be able to determine what the limitations are. Obviously such a determination would be impossible. Petitioner's net income for the year 1940, the year here involved, was approximately

$77,000. The corpus of these trusts consisted of securities valued at $10,000, truly a small percentage of the amount of his income for that year. The total income from both trusts was approximately $830. It is obvious that the income from the trusts is of small concern to petitioner and his wife at the moment. However, the future is a different matter. Under the protection of the holding of the majority, petitioner and his wife have two tax-proof trusts. The corpus thereof can be increased from time to time in the sole discretion of petitioner and his wife with a resulting increase of trust income, and a lessening of their individual incomes.

Further, petitioner has the sole right to revoke the trust at any time merely by writing himself a letter as trustee. The trust property is then to be conveyed to petitioner's wife. This power exists in petitioner in his sole discretion. The relationship between petitioner and his wife is a friendly one and will be presumed to continue. At the present time, in view of the size of petitioner's income, it does not appear that he will ever require the small amount of money constituting the corpus of these trusts. In the future, if he should ever need it, the money is his for the taking. Considering the whole bundle of rights and powers given to petitioner as an individual over the trust income and trust estate, I think the doctrine of the *Clifford* case requires the holding that petitioner is the substantive owner of the trust estate and that the income therefrom is taxable to him under section 22 (a) of the Internal Revenue Code.

TURNER, SMITH, ARNOLD, KERN, and OPPER, *JJ.*, agree with this dissent.