## COMMISSIONER OF INTERNAL REVENUE v. NEWMAN.

### No. 16, Docket 20211.

Circuit Court of Appeals, Second Circuit.

Feb. 20, 1947.

L. HAND, Circuit Judge, dissenting.

———◆———

Melva M. Graney, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and Helen R. Carloss, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Frederick E. Winkler, of New York City (Bruce McClain, of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The question presented is whether the income from two trusts established by Lillian M. Newman in 1940 is taxable to her husband, Sydney R. Newman, who is also trustee of both trusts. The two trusts were identical except for the income beneficiaries; one named the Newmans' minor daughter, the other their minor son, as recipient of the income for life, with remainder to the taxpayer, or, in case of his death, such persons as he should appoint, and in default thereof, to his distributees. Both trusts contained the usual grant of managerial powers and duties to the trustee in his official capacity. To these powers, successor trustees, provided for in the instruments, would succeed if respondent himself resigned or became incapacitated. There was, however, one grant of power to respondent individually, by name.

This grant reads: "Said Sydney R. Newman shall have the power at any time during his life, by an instrument in writing delivered to the Trustee, to revoke this agreement, in whole or in part, or to alter or amend the same or to free any of the property held in trust from the terms of this trust, and upon receipt of such instrument in writing, the Trustee shall turn over to the Grantor any funds or property held by the Trustee hereunder as required by said written notice, and the receipt of the Grantor for such property shall be a full acquittance to the Trustee." If this grant empowers respondent to appropriate either the principal or the income of the trusts to himself, the income is taxable to him. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Richardson v. Commissioner of Internal Revenue, 2 Cir., 121 F.2d 1, certiorari denied 314 U.S. 684, 62 S.Ct. 188, 86 L.Ed. 584. The Tax Court, six judges dissenting, determined that it did not, 5 T.C. 603, and the Commissioner has petitioned this court for review.

 Whether the grant gives respondent such power depends upon the intention of the grantor as expressed in the instruments. The instruments must be construed according to the law of New York because they were there executed and specifically provide that that law shall govern. Under New York law a power granted in trust must of course be exercised according to the provisions of the trust. But a power is not considered granted in trust unless its execution is beneficial to another who must be designated in or be clearly ascertainable from the instrument creating the power. Sweeney v. Warren, 127 N.Y. 426, 433, 434, 28 N.E. 413, 414, 24 Am.St.Rep. 468. Moreover, if a power is granted individually and not in trust, no intent to restrict it will be inferred from the fact that the grantee is in the same instrument given fiduciary duties. Manion v. Peoples Bank of Johnstown, 292 N.Y. 317, 55 N.E.2d 46. Such a power may be exercised for the grantee's own benefit. In the case at bar the powers to revoke, alter, and amend the trust and free the property from its terms are granted to respondent individually, by name. No inference that they were granted in

trust may be drawn from the fact that he was also named trustee. All other powers and duties devolving upon respondent, even from the paragraph under discussion, were given him as "trustee." Since these powers alone were given to him by name, we must conclude that he was to enjoy them without restriction, regardless of who was trustee. Commissioner of Internal Revenue v. Estate of Holmes, 326 U.S. 480, 489, 490, 66 S.Ct. 257. Moreover, the power to revoke the trust or free the property from it may be exercised only in a manner detrimental to the interests of the beneficiaries. By the exercise of these powers the interest of the beneficiaries in the trust property would necessarily be pro tanto destroyed. Since these powers so clearly cannot be considered as in trust, the others constituting a part of the same grant should not be differently construed.

As he therefore holds these powers individually, and not in trust, respondent may exercise them in whatever manner he sees fit, subject to limitations contained in the instrument. Under the grant the trustee, upon being notified of respondent's exercise of his powers, is required to transfer the property involved to the grantor. Since it does not provide affirmatively for the transfer of property to any one else, it is conceivable that this provision may prevent respondent from vesting the principal in any one but his wife. We need not decide this issue, however, for there is no such limitation on his control over the income under his power to alter or amend the trust. Under this power he may well wish to vary the grants of income, as a matter of discipline or other control, giving to one child, denying to the other, or accumulating it in his own hands, as he wishes. The point is that he has just that unfettered power, and he may employ it without even changing the possession of the trust securities. And being also remainderman, he has little need to worry as to the eventual disposition of the fund.

Circumstances surrounding the creation of the trusts strengthen this interpretation of the grantor's intention. The taxpayer, in whose office the trusts were drawn, was a New York lawyer who han-

dled tax and trust matters. All the parties to the trust were members of the same intimate family group. The trusts were not established to provide security for the taxpayer's children by setting aside for them a fund freed from the taxpayer's control. On the contrary, they represent another attempt at technical reallocation of income within a family group to avoid taxation. As a matter of fact the income from the trusts was not paid to the children, although it was provided in the trusts that it should be annually so paid. The taxpayer's income for 1940 was approximately $77,000. His wife was independently wealthy. Yet the principal of each of the funds consisted of securites worth about $10,000, which earned around $415 in 1940. There was, however, a specific provision in each trust empowering the grantor to add to the principal. It is obvious that if the experiment succeeded, the grantor and his wife would be in a position to realize great savings in tax bills by adding to the trust funds. The weakness in the scheme, however, is one inherent in respondent's intention. That intention, it seems clear, was to show on the face of the documents a technical absence of his control over the fund, while actually retaining the power to use the fund as he saw fit. Since he retains this beneficial power, the income from the trusts is taxable to him and he is subject to a deficiency assessment.

Reversed and remanded.

L. HAND, Circuit Judge (dissenting).

I agree that Newman was to have the powers granted by Article Tenth although he should "resign or be otherwise unable to act"; and it is of course incredible that he should not also have them while he was trustee, in spite of the fact that some of the language does not literally fit that period: e.g., that upon occasion he was to give a written instrument to himself. I cannot believe, however, that the words, "alter or amend," sandwiched in as they are between a power wholly, and a power partially, to revoke, allowed him to divert the income from his children to himself. The argument is, as I understand it, that the power to "alter or amend" was granted in order to give him control over them; and to that I answer that he already had the fullest possible control in the power to revoke, in whole or in part. Most significantly, any exercise of that power resulted in a reverter to his wife. Besides, in view of the obvious affluence of the family, I cannot seriously suppose that she thought that a power to take away an income of some $400 a year would give him any perceptible added control. But suppose she did, how did it contribute to the result to let him keep the money for himself? Would it not indeed do more, if he were compelled to accumulate any sums denied to a child, as a bait for better subservience in the future?

Therefore, even if Newman had not been made trustee, and if the naked powers had alone been given him, I should construe "alter or amend," in what appears—to me at any rate—to be their more natural meaning: that is, as enabling him to accommodate the administration of the trust to possible changes in circumstances. But when we consider that he was to be trustee, and that he would probably continue to be the trustee while he lived, our reading becomes to my mind still more likely. Had he not been the father of the beneficiaries, I submit that we should all have agreed that such an equivocal phrase would not have allowed him for his own benefit to frustrate the main purpose. The fact that he was the beneficiaries' father does indeed relieve this of its more acute improbability; nevertheless, it remains true that we are reading language which certainly does not imperatively demand such a result, so as to give to a trustee a power totally at variance with the most fundamental duty of every trustee; not to feather his own nest at the expense of his charge. If that was the purpose, I submit it ought to have been more plainly put.

Finally, if I understand the Commissioner, he wishes us to consider that these deeds may have been a preliminary step in a reprehensible scheme to lessen the wife's income taxes. There is not the faintest ground for imputing any such purpose to the parties at bar; and, if there were, it ought not to count. Over and over again courts have said that there is nothing

sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions. To demand more in the name of morals is mere, cant.