GRIFFIS, J.,
concurring in part and dissenting in part.
¶ 34. I would affirm the chancellor on all issues. Therefore, I dissent from the majority on Issue No. 1 (child support modification), and I concur with the majority on Issue No. 2 (modification of child visitation) and Issue No. 3 (award of attorney’s fees).
¶ 35. Under our standard of review, I cannot conclude that the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard in determining the amount of Rusty’s income. To determine the appropriate amount of child support, the chancellor must first consider the income of the parties. In many instances, chancellors rely on independent third parties to provide credible evidence of a litigant’s income, e.g., employer wage statements or earning information. Where an independent third party provides credible information of a party’s earnings, the chancellor may accept such evidence as conclusive. Where there is no independent credible evidence to establish the amount of earnings and the parties present conflicting evidence, the determination of a party’s actual income becomes a factual issue for the chancellor to determine from the evidence presented.
¶ 36. Where a party is self employed, chancellors do not always have the luxury of an independent verification of the actual income earned by that party. A chancellor has many sources from which to determine a self employed litigant’s actual earnings. A chancellor may rely upon expert testimony from certified public accountants (CPA) or other documentary evidence where the party has disclosed his or her income.
¶ 37. CPAs provide different types of financial statements. A CPA may provide audited financial statements where the CPA opines that the statements were prepared in accordance with generally accepted accounting principles. A CPA may provide a compiled financial statement where the CPA offers no opinion as to the accuracy of the amounts included in the statements, but simply accepts financial information provided by the client and inserts the information in the appropriate categories. The chancellor may then determine whether the financial information is accurate, credible or persuasive.
¶ 38. On most occasions, however, just as in this case, the chancellor must wade through conflicting and confusing financial information submitted by the parties. While it is reasonable to expect that every person knows or should know how much they earned during a certain period of time, that is not always the case. Depending on the situation, some litigants have prepared financial information, such as balance sheets, income statements and tax returns, in such a manner as to increase or decrease the amount of income that they report depending on the appropriate reporting requirements and standards or based on the consequences that may result.
¶ 39. My primary objection to the majority’s opinion is the requirement that “[i]f on remand, the chancellor does not accept the amount of income shown on any of Rusty’s filed tax returns as his true income, the chancellor shall make specific findings as to why the amount was not *483 deemed reliable.” In my opinion, this requirement is not based on any statute or case precedent, but is instead this Court’s effort to reweigh the evidence and substitute its judgment for that of the chancellor. The chancellor should not be required to substantiate each factual finding; but, instead, we should look to the record to see if there is evidence to support the factual finding.
¶ 40. The majority recognizes and attempts to correct a mistake on Rusty’s 2001 Form 1040 federal tax return where he listed his Schedule C income at $61,891 on page 1, and on Schedule C he itemized the amount at 5,685. The amount included on page 1 of Form 1040 is the amount that Rusty provided to the United States Treasury as the amount of his income, under the penalty of perjury. The majority relies on the lesser amount. It is the figure of $61,891 that Rusty chose to submit under the penalty of perjury, and it is the amount the chancellor had the right to rely upon.
¶ 41. The accounting rules for reporting federal income taxes is governed by Title 26 of the United States Code. The accounting rules for financial statements are based on generally accepted accounting principles, as established by the Financial Accounting Standards Board. There are certain instances where these rules differ and have substantial impact on the income reported, e.g., accelerated depreciation under 26 U.S.C. § 168, and immediate wri-teoff of capital assets for small businesses under 26 U.S.C. § 179. Indeed, Congress often uses the internal revenue code and tax rules as a method to stimulate the economy or to effectuate its social policy, as opposed to a fair and accurate method of reporting income and expense.
¶ 42. The majority’s reliance on Rusty’s tax returns fails to recognize one of the most often quoted legal principles. Judge Learned Hand once concluded:
Over and over again courts have said that there is nothing sinister in so arranging one’s affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions. To demand more in the name of morals is mere cant.
Comm’r v. Neuman, 159 F.2d 848, 850-851(CA2) (L.Hand, J., dissenting), cert. denied, 331 U.S. 859, 67 S.Ct. 1755, 91 L.Ed. 1866 (1947).
¶ 43. Such is the case here. Rusty is engaged in the landscape business. Rusty’s business typically deals in cash, and he is subject to very few reporting requirements. Indeed, as shown through the conflicting evidence presented to the chancellor, Rusty can make his income appear to be what he wants depending on to whom he is providing the information and the purpose for which it is to be used. For example, to establish his income for federal and state income tax purposes, Rusty, as Judge Hand concluded long ago, is motivated to file tax returns with the lowest possible income to avoid sending his hard earned money to the government in the form of taxes. To obtain a bank loan, however, Rusty is motivated to provide proof of his highest possible income to prove to the bank that he has the earning capacity to repay the loan. Without proof of ability to repay, the bank will not loan the money. This case is a classic example of the conflicting motivations, and the chancellor had to sort it out.
¶ 44. What is certain, however, is that the chancellor was presented conflicting evidence of the actual amount of Rusty’s income. The chancellor used her best efforts to determine the “true” amount of *484 Rusty’s income. We must determine whether there was evidence to support the chancellor’s factual finding.
¶ 45. Rusty’s accountant, Fountain CPA Group, provided Brian Kozlowski and The Peoples Bank with an unaudited statement of income and expenses that indicated his “net profit” was $89,648 for the period from January 1, 2001 through September 30, 2001. Mr. Kozlowski, Rusty’s friend and banker, prepared this information for Rusty to apply for and obtain a loan from The Peoples Bank, a federally insured financial institution. By submitting the loan application, Rusty certified that his monthly income was $8,400. He did not indicate that such amount was on a nine month basis instead of a twelve month basis. The loan application included the following language:
I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties, including, but not limited to, fine or imprisonment or both under the provision of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this Application.
Although the loan application submitted does not include Rusty’s signature, he was subject to the criminal penalties under Title 18, United States Code, Section 1001, et seq. Misrepresentation or fraud on an application to a federally insured financial institution is a serious crime. Accordingly, just as with his tax return, the amount of income reported on The Peoples Bank loan application was submitted under the penalty of perjury, and the chancellor was justified in relying on this amount to determine Rusty’s income.
¶ 46. Rusty argues that the bank loan application was “unaudited” and that it failed to include his cost of doing business deductions. I am not persuaded by this argument. Rusty chose to present “unaudited” numbers to the bank. If these numbers were not correct then Rusty committed a crime of misrepresentation or fraud against the bank. Further, the Fountain CPA Group provided an amount for “net income” which included a deduction for Rusty’s costs of doing business. To not sanction Rusty’s flippant disregard for the amount of income that he provided under the bank loan application, would be to fail to recognize the seriousness of Rusty’s offense in providing this incorrect and unsubstantiated amount of income to a federally insured financial institution.
¶47. The chancellor considered other evidence that corroborated the higher amount of income. Rusty also provided similar financial information to another federally insured financial institution, Keesler Federal Credit Union. On a KFCU worksheet dated January 8, 2000, Rusty’s total annual household income was listed at $99,000. On a KFCU worksheet dated August 30, 2000, Rusty’s total annual household income was listed at $84,000.
¶ 48. The majority expresses concern about Rusty’s 2001 federal tax return, which contained conflicting information. However, it is not for the chancellor or this Court to attempt to decipher and correct mistakes in the financial information submitted by the parties. Instead, it is for the chancellor to attempt to discern what evidence is reliable and credible. Here, the chancellor chose to accept the income *485 figures that Rusty provided, under penalty of perjury, to The Peoples Bank, KFCU and on page 1 of his 2001 Internal Revenue Form 1040. Of the evidence provided to the chancellor, I am of the opinion that the earnings amount provided to the federally insured financial institutions is a better and more accurate gauge of Rusty’s earning capacity.
¶ 49. Accordingly, based on our standard of review, I cannot conclude that the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard in determining the amount of Rusty’s income. The chancellor had substantial evidence that supported her factual decision. I would affirm the chancellor on this issue.
SOUTHWICK, P.J., JOINS THIS SEPARATE OPINION.